In the United States District Court

For the Western District of Pennsylvania

| | | |
|---|---|---|
| **Tyrone Green** | : | **CA. No. 03-149 Erie** |
| (PLAINTIFF) | : | |
| V. | : | **District Judge McMlaughlin** |
| **Martin Horn, ET AL.** | : | **Magistrate Judge Baxer** |
| (DEFENDANT) | : | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff, Tyrone Green, Pro-se and files this motion for Summary Judgment, as follows:

### SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogators, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Further, Rule 56 enables a party contenting that there is no genuine dispute as to a specific, essential fact to demand at least one sworn averment of that fact before the lengthy process of litigation continues. **Schoch V. First Fidelity 912 F. 2d 654, 657 (3rd Cir. 1990), quoting, Lujan V. National Wildlife 497 U.S. 871 (1990).**

### REASON FOR SUMMARY JUDGMENT

S.C.I.Albion security, Captain Defendant (JOHN DOE) was deliberately indifferent to Plaintiff serious medical needs by intentionally denying to transport plaintiff to scheduled appointment prescribe by Millcreek Hospital and S.C.I. Albion's

medical staff on two separate occasions. Citing **Hurst V. Phelps 579 F. 2d 940 (1978).** The Hurst case is very similar to plaintiff's case, in that case prison guards was deliberately indifferent when they refused to take plaintiff to the medical appointment on grounds he was a security risk.

Then we have, **Smallwood V. Renfro 708 F. Supp. 182-186-88 (1989);** Plaintiff in Smallwood V. Renfro was denied transport to the hospital with a bloody lip, in citing **Estelle V. Gamble 429 U.S. 97, 104-05.** "we therefore conclude that deliberate indifference to a serious medical need of a prisoner constitute the unnecessary and wanton infliction of pain" prescribed by the Eighth Amendment. This is true whether the indifference in manifested by the prison doctor in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Also see, **Delker V. Maass 843 F. Supp. 1390, 1398 (D. Or. 1994),** holding that prison officials disregarding a surgeon's recommendation on non-medical grounds could constitute deliberate indifference.

**H.B. Lewis 803 F. Supp. 246, 247 (D. Ariz. 1992)** over-riding of medical decision by security staff.

If prison officials send prisoner with special need to outside specialist, they are obliged to carry out the specialist's orders. See, **Ellis V. Butter, 890 F. 2d 1000, 1004,** cancellation of appointment with knee specialist. **Johnson EL V. District of Columbia 579 A. 2d 163, 169 (D.C. 1990),** allegation that dermatological treatment was delayed or denied

by lack of transportation stated a deliberate indifference claim.

Plaintiff here in the case before this court has provided overwhelming case law to support his claim that once a doctor or specialist makes a recommendation prison officials are obliged to carry out the specialist's order.

Here the facts to support Plaintiff's undisputed claims.

Accompanying this motion for Summary Judgment is a copy of defendant Baker's answer to Plaintiff's interrogators.

On page #4, Question #4, Defendant Baker states; according to plaintiff medical records from the PA. D.O.C. Plaintiff was scheduled for an onsite visit with Dr. Ferretti on Friday, September 14, 2001 because medical staff was unable to schedule plaintiff off-site due to scheduling and security concerns.

On page #5, Question #5, Defendant states; after discussing the <u>security and scheduling concerns</u> with Dr. Ferretti, the medical staff was able to schedule on-site visit with orthopedic specialist Dr. Ferretti to evaluate and treat plaintiff's condition.

On page #6, Question #9, Defendant states; that he ordered plaintiff to be sent to Millcreek Hospital on August 27, 2001 and on September 5, 2001. ( September 5, 2001 Plaintiff was denied transportation). For the first two evaluation with the orthopedic physican following the plaintiff's injury on August 25, 2001.

On page #7, Question #10, Defendant states; that it

was not his decision not to send plaintiff to Millcreek Hospital. To the contrary, defendant ordered Plaintiff to be sent to Millcreek Hospital.

On page #8, Question #15, when defendant Baker was asked, are you responsible for not sending Plaintiff to his first two appointments? Defendant responds as follows, **NO!**

For the above uncontradicted, undisputed evidence supported by defendant Baker's answer to interrogators, Summary Judgment should be granted in favor of Plaintiff, because there is no genuine dispute as the issue that defendant security, Captain of S.C.I. Albion (John Doe) denied Plaintiff of prescribe medical Follow-up-care. See, Federal Rules of Civil Procedure 56(c).

Summary Judgment should be made against defendant Security, Captain (John Doe) of S.C.I. Albion for denying Plaintiff prescribe medical treatment. **Estelle, 429 U.S. at 104.** Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reason, denial of prescribed medical treatment, a denial of reasonable request for treatment that results in suffering or risk of injury, **Durmer V. O'carroll, 991 F. 2d 64, 68 (3d Cir. 1993).**

On many occasions Millcreek Hospital and S.C.I. Albion medical staff scheduled Plaintiff for Follow-up treatment, the type of treatment Plaintiff would have received really is not the focus of Plaintiff complaint. Furthermore the follow-up treatment that Plaintiff would have received was of importance because he was re-scheduled on three different

occasions.

Plaintiff was told by the attending physician at Millcreek Hospital that he would be returned for casting. The only person that can dispute that is the attending physician. It is clear that the Defendants don't know what type of treatment Plaintiff would have received, because of the poor records that was kept. Plaintiff finds it hard to believe that S.C.I. Albion's medical staff had conversation with Dr. Ferretti on several occasions and re-scheduled Plaintiff on three different occasions without being briefed on the type of treatment Plaintiff was going to receive. O.K. If Plaintiff wasn't going to receive casting, then one should wonder what type of treatment Plaintiff would have received where Albion medical staff and MCH tried on three occasions to have Plaintiff sent for treatment off-site;

1. Scheduling and security concerns is a non-medical reason.

2. Defendants claim that Plaintiff was being treated at S.C.I Albion and the medical staff determined on 10-1-01 that Plaintiff needed no off-site treatment because his hand was healing well. This was six weeks after Plaintiff injury and after three to four denied medical appointments.

3. It is obvious that Albion's medical staff did not determine that they were going to attend to Plaintiff's medical needs, because they kept re-scheduling Plaintiff to go to Millcreek Hospital for follow-up care. after five to six weeks of Defendant John Doe (security) denying to transport Plaintiff off-site. It was determined not to send Plaintiff off-site

PAGE 5

because his hand was in a advance healing stage.

Summary Judgment should be granted against Defendant John Doe (Security of S.C.I. Albion, because Defendant failed to dispute Plaintiff claims. Failed to respond to Plaintiff amend complaint. Failed to turn over discovery and totally ignore and or disregarded Plaintiff medical needs.

Also Plaintiff moves for Summary Judgment against Defendant Baker.

The keeping of medical records is a necessity. **Johnson EL V. Schoemehi 878 F. 2d 1043, 1055 (8th Cir. 1989).**

Adequate and accurate records are of critical importance.... in any attempt to provide a continuity of medical care, and absent or deficient records create the possibility for disaster; **Burk V. Teasdale 492 Supp. 650, 676 (W.D. MO 1980).**

Numerous courts have condemned the failure to maintain a reasonably complete and organized system of medical records; **Fambro V. Fulton county GA. 713 F . Supp. 1426, 1429 (1989); Cody V. Hillard 599 Supp. 1025, 1040 (8th Cir. 1987).**

In the case at bar, our Magistrate has condemned the manner in which Albion medical staff received Plaintiff's Medical records. Her Honor was unable to read them and missed key point of Plaintiff claims.

Defendant Baker has claimed that Plaintiff was not ordered to return to Millcreek for casting. **See Defendant's answer to Plaintiff's Amended Complaint dated 10-1-05, page 2.** Defendant states; no permanent cast was ordered for Plaintiff

hand. However, Plaintiff medical record don't state the type of treatment Plaintiff was going to receive, because Albion's medical staff failed to record it. Any reasonable person would think that the medical staff at Albion would have inquired into the type of medical treatment Plaintiff would have received if returned to Millcreek Hospital. Plaintiff was informed by the attending physician of the treatment (casting) he was going to receive, and Plaintiff strongly believe that the same physician at Millcreek Hospital informed the medical staff at S.C.I. Albion, but Albion failed to make a record of it. Defendant Baker is making a bald assertion without any medical records to support it.

Defendant Baker can not dispute through medical records Plaintiff's allegation that he was to be returned to Millcreek for casting because no record was kept as to the type of treatment Plaintiff would have received. Thus, if Plaintiff allegations is undisputed by factual records, then by law the court is suppose to take Plaintiff allegations as being true.

On page #6 of Defendant answer to interrogators the question was ask to Defendant Baker;

QUESTION - What security officer had the scheduling and security concern with transporting Plaintiff to Millcreek?

DEFENDANT ANSWER: This information is unknown to the Defendant.

Again, Plaintiff is shocked! Here you have an unknown security officer denying to follow pre-scribed medical orders on three occasions and Defendant Baker failed to keep a record

of the security officer's name.

On page #3 of Defendant's answer and Affirmative Defenses to Plaintiff Amended Complaint, Defendant states on line 16: <u>Plaintiff claimed injuries and or damages, if any, were the result of conduct of individuals and or entities not within Dr. Baker's control.</u>

Plaintiff humbly ask this court not to consider defendant false explanation. It is well established that medical can over-ride security on medical issues. Defendant Baker's decision could have over-rode the "unknown security officer's" if defendant Baker would have taken the proper administrative remedies (chain of command). However, the defendant did nothing, in fact the treatment Plaintiff did receive at S.C.I. Albion was ordered by Dr. Ferrtti at Millcreek Hospital. Once this "unknown security officer" refused to transport Plaintiff per, Doctor orders, Defendant Baker was obliged to at least contact the supervisor of that officer, if not the Warden.

Defendant Baker compounded the denial or neglect by standing by doing nothing. Making him just as liable.

Finally, Defendant states that Plaintiff did not show up for an on-site medical appointment on 9-14-01. Plaintiff had no knowledge of this appointment. Furthermore, if Plaintiff was scheduled for this appointment Plaintiff's housing unit was literally three (3) minutes away from S.C.I. Albion's infirmary. A simple 3 digit phone call to Pl;aintiff's housing unit and in three minutes Plaintiff would have been there. There is no record of a call-out that Plaintiff was on for

this appointment, this could have been a simple over sight by Plaintiff. This also show the disregard to Plaintiff by Albion's medical staff. They did not have the human decency to call for Plaintiff. The facts set forth in this motion for Summary Judgment show Defendant Baker, and Defendant John Doe (Security, Captain) was deliberately indifferent to Plaintiff's medical needs.

Wherefore, Plaintiff, Tyrone Green has produce undisputed facts to support his issues, and moves for Summary Judgment in his favor and against the Defendant.

### CONCLUSION

1. Defendant Security, Captain (John Doe) denied Plaintiff follow-up care prescribed by Physicians.
2. Defendant Baker failed to take appropriate steps to over-ride securities denial of Plaintiff prescribe follow-up treatment.

The Motion for Summary Judgment should be granted in favor of Plaintiff.

Respectfully Submitted,

*Tyrone Green*

Tyrone Green #EP-4593
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652

## CERTIFICATE OF SERVICE

I, **Tyrone Green** hereby certify that a true and correct copy of the foregoing MOTION FOR SUMMARY JUDGMENT in favor of Plaintiff, Defendants Plaintiff Amended Complaint, and Answer to Interrogators was served VIA Institutional mail, this day; **October 13, 2005** upon;

>Scott Bradley, ESQ.
>Litigation Section
>6th Floor, Manor Complex
>564 Forbes Ave.
>Pittsburgh, PA 15219

>Elizabeth M. Yanelli, ESQ.
>The Thirty-Eighth Floor
>One Oxford Centre
>Pittsburgh, PA 15218

Date; October 13, 2005

*/s/ Tyrone Green*
Tyrone Green #EP-4593
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652