IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE GREEN, | : | CA. No. 03-149 Erie |
| | : | |
| Plaintiff, | : | |
| | : | District Judge McLaughlin |
| vs. | : | |
| | : | Magistrate Judge Baxter |
| MARTIN HORN, ET AL. | : | |
| | : | *Filed Electronically* |
| Defendants. | : | |
| | : | JURY TRIAL DEMANDED |

**JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS IN
SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT**

AND NOW COME Defendants, Mark Baker, D.O. and Dan Telega, P.A., by and through their attorneys, Elizabeth M. Yanelli, Esquire, and Pietragallo, Bosick & Gordon LLP, and file this Joint Statement of Undisputed Material Facts in Support of their Joint Motion for Summary Judgment as follows:

1.  This is a *pro se* civil rights action in which Plaintiff, Tyrone Green, alleges that he was denied follow-up treatment for an injury to his right hand due to security reasons at the State Correctional Institution at Albion ("SCI-Albion").

2.  On August 25, 2001, Plaintiff was evaluated for a complaint that he fell in the shower, injuring his right hand. (SCI-Albion Records, Exh. C, Progress Notes, 8/25/01; Baker Aff., Exh. A, ¶ 6).

3.  Plaintiff was placed in the prison infirmary at SCI-Albion and a splint and an Ace wrap were applied to his right hand. (Id.) He was ordered 800 milligrams of Motrin for pain. (Id.)

4. The following day, on August 26, 2001, Dr. David Bashline evaluated Plaintiff and ordered that an x-ray be taken of Plaintiff's right hand the next morning. SCI-Albion Records, Exh. C, Progress Notes 8/26/01; Baker Aff., Exh. A, ¶ 8).

5. Dr. Bashline also ordered Plaintiff to be released from the prison infirmary, and upon Plaintiff's release from the infirmary, it was noted that the Plaintiff stated that he was "fine" and had no voiced complaints. (Id.).

6. On August 27, 2001, Plaintiff had an x-ray of his right hand at SCI-Albion, which revealed that he had a minimally displaced 4th metacarpal fracture and a "probable old chip at the base of the 5th metacarpal." (SCI-Albion Records, Exh. C, X-ray Report 9/18/01; Baker Aff., Exh. A, ¶ 10).

7. At no time was an order issued to have Plaintiff's hand placed in a cast, and at no time did either Dr. Baker or Mr. Telega determine that a cast was medically necessary or appropriate. (Baker Aff., Exh. A, ¶¶15-16; Telega Aff., Exh. B, ¶ 15).

8. Both Dr. Baker and Mr. Telega saw Plaintiff on August 27, 2001. (SCI-Albion Records, Exhibit C, Progress Notes, 8/27/01; Baker Aff., Exh. A, ¶ 12; Telega Aff., Exh. B, ¶ 6).

9. Dr. Baker ordered Plaintiff to be sent to Millcreek Community Hospital for an orthopedic consultation. (SCI-Albion Records, Exh. C; Baker Aff., Exh. A, ¶12).

10. The August 27, 2001 Order correctly reflects Dr. Baker's order that Plaintiff was to be sent to Millcreek Community Hospital for an orthopedic consultation. (Id.; Baker Aff., Exhbit A, ¶ 12; Telega Aff., Exhibit B, ¶ 7).

11. Although Mr. Telega authored a Progress Note on August 27, 2001 that stated that Plaintiff would be sent to Millcreek Community Hospital for casting, the August 27, 2001 Progress Notes does not accurately reflect the August 27, 2001 Physician's Order or the treatment plan that appears in the Physician's Orders

ordering that Plaintiff be transported to Millcreek for an orthopedic consultation. (Baker Aff., Exh. A, ¶ 13-14; Telega Aff., Exh. B, ¶ 9).

12. The records from both SCI Albion and Millcreek Community Hospital reflect that Plaintiff was, in fact, transported to Millcreek Community Hospital on August 27, 2001, where Dr. Bereczki and Dr. Tony Ferretti, the attending orthopedic specialist, examined Plaintiff. (SCI-Albion Records, Exh. C, Progress Notes, 8/17/01; MCH Records, Exh. D; see also Baker Aff. Exh. A, ¶ 17).

13. At no time did Dr. Tony Ferretti or any medical personnel order a cast for Plaintiff, and at no time did Dr. Ferretti or any other medical personnel determine that casting was medically necessary to treat Plaintiff's condition. (MCH Records, Exh. D; Baker Aff. A, ¶¶ 18-21).

14. Upon physical examination of Mr. Green's right hand, Dr. Bereczki and Dr. Ferretti noted that Plaintiff had diffuse swelling, but that his capillary refill was intact and his right hand showed no neurological deficit. (MCH Records, Exh. D; Baker Aff., Exh. A, ¶ 17). Plaintiff's condition was noted to be "stable" and "improved." (Id.).

15. Dr. Ferretti ordered Plaintiff to receive an ulnar gutter splint and a sling, both of which Plaintiff received that day, and Plaintiff was instructed to rest, apply ice, elevate his right hand, and keep his splint dry. (MCH Records, Exh. D; Baker Aff., Exh. A, ¶¶ 18-20).

16. At no time was a cast ordered. (MCH Records, Exh. D; Consultation Record, 8/27/01; Baker Aff., Exh. A, ¶ 18).

17. The orthopedic specialist did not order Plaintiff to receive a cast and it was determined that a cast was not medically necessary. (MCH Records, Exh. D; Baker Aff., Exh. A, ¶ 19).

18. The follow-up instructions provided at Millcreek, entitled "Orthopedic Instructions," did not include any order that Plaintiff receive a cast to treat his injury. (See MCH Records, Exh. D; Baker Aff., Exh. A, ¶ 20).

19. Plaintiff was ordered to have a follow-up appointment at 2:15 p.m. on September 5, 2001 in the orthopedic clinic. (SCI-Albion Records, Exh. C, Consultation Record, 8/27/01).

20. On September 4, 2001, Clinical Specialist, Rebecca Gould, was unable to schedule Plaintiff for an offsite visit with Dr. Ferretti at Millcreek Community Hospital due to scheduling and security concerns of non-emergent outside trips. (SCI-Albion Records, Exh. C, Progress Notes, 9/4/01; Baker Aff., Exh. A, ¶ 23).

21. Ms. Gould spoke with Dr. Ferretti's staff regarding this issue, and Dr. Ferretti advised that Plaintiff could be evaluated onsite at SCI-Albion, during the orthopedic clinic, on September 14, 2001. (Id.).

22. Plaintiff failed to show up for his September 14, 2001 visit. (SCI-Albion Records, Exh. C, Progress Notes, 9/14/01; Baker Aff., Exh. A, ¶ 24).

23. The medical staff followed up with Dr. Ferretti regarding Plaintiff's failure to appear for his September 14, 2001 appointment, and Dr. Ferretti ordered Plaintiff to be seen offsite at Millcreek Community Hospital Orthopedics within two weeks. (Id.; see also SCI-Albion Records, Exh. C, Consultation 9/14/01; Baker Aff., Exh. A, ¶ 24).

24. Ms. Gould scheduled Plaintiff for an offsite visit with Dr. Ferretti at Millcreek Community Hospital to take place on Wednesday, September 26, 2001. (SCI-Albion Records, Exh. C, Progress Notes, 9/17/01; Baker Aff., Exh. A, ¶ 25).

25. On September 20, 2001, Dr. Ferretti and Physician's Assistant Tammy Mowry reviewed Plaintiff's medical chart and discussed his chart at length. (SCI-Albion Records, Exh. C, Progress Notes, 9/20/01; Baker Aff., Exh. A, ¶ 25).

26. Dr. Ferretti ordered that an x-ray be taken of Plaintiff's hand onsite at SCI-Albion and that the film be transported to Millcreek Community Hospital for review by Dr. Ferretti in order to avoid any security issue of non emergent outside trips by Plaintiff. (Id.; see also SCI-Albion Records, Exh. C, Physician's Orders, 9/20/01 and Consultation Record, 9/21/01; Baker Aff., Exh. A, ¶ 26).

27. Dr. Ferretti ordered Plaintiff to be rescheduled to be seen at an onsite clinic at SCI-Albion on October 12, 2001 unless he, Dr. Ferretti, deemed it necessary for Plaintiff to be seen prior to October 12, 2001. (SCI-Albion Records, Exh. C, Consultation Records, 9/20/01, 10/12/01; Baker Aff., Exh. A, ¶ 30, ¶ 27).

28. As per Dr. Ferretti's orders, an x-ray of Plaintiff's right hand was taken on September 21, 2001 and was provided to Dr. Ferretti's office that day. (SCI-Albion Records, Exh. C, Consultation Record, 9/21/01; Baker Aff., Exh. A, ¶ 29).

29. Dr. Ferretti reviewed the x-ray of Plaintiff's hand taken on September 21, 2001 and noted that Plaintiff's hand was **"healing well—no medical necessity to send patient offsite."** (SCI-Albion Records, Exh. C, Progress Notes 10/1/01(emphasis added); Baker Aff., Exh. A, ¶ 30).

30. Dr. Ferretti did not recommend that any cast be placed on Plaintiff's hand, no cast was medically necessary or appropriate, and Dr. Ferretti determined that there was no need to send Plaintiff offsite to Millcreek Community Hospital because Plaintiff's hand was healing well. (SCI-Albion Records, Exh. C, Consultation Record 9/20/01; Baker Aff. A, ¶¶ 18-21).

31. On October 12, 2001, Dr. Ferretti examined Plaintiff's right hand at the orthopedic clinic at SCI-Albion and ordered that Plaintiff's splint be removed. (SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-ray Report, 10/13/01; and Progress Notes, 10/12/01; Baker Aff., Exh. A, ¶ 31).

5

32. Dr. Ferretti did not order casting for Plaintiff's hand, and did not order Plaintiff to be transported to Millcreek Community Hospital for follow up. (Id.).

33. Rather, Dr. Ferretti examined Plaintiff's right hand at the orthopedic clinic at SCI-Albion and ordered that Plaintiff's splint be removed. (SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-ray Report, 10/13/01; and Progress Notes, 10/12/01; Baker Aff., Exh. A, ¶ 31).

34. Also on October 12, 2001, Dr. Ferretti ordered another x-ray of Plaintiff's right hand and physical therapy.

35. On October 12, 2001, Dr. Ferretti examined Plaintiff's right hand at the orthopedic clinic at SCI-Albion and ordered that Plaintiff's splint be removed. (SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-ray Report, 10/13/01; and Progress Notes, 10/12/01; Baker Aff., Exh. A, ¶ 31).

36. Also on October 12, 2001, Dr. Ferretti ordered another x-ray of Plaintiff's right hand and physical therapy. The October 12, 2001 x-ray revealed moderately advanced healed fractures. (SCI-Albion Records, Exh. C, X-Ray Report, 10/13/01).

37. Dr. Baker also reviewed the x-ray report and determined that the findings were not clinically significant. (Id.; see also Baker Aff., Exh. A, ¶ 32).

38. On October 12, 2001, Dr. Ferretti ordered Plaintiff's splint and sling to be removed because they were no longer medically necessary or appropriate to treat Plaintiff's injury. (SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-Ray Report, 10/13/01; Progress Notes, 10/12/01; Baker Aff., Exh. A, ¶ 34).

39. Dr. Baker also found that a splint and sling were not medically necessary or appropriate to treat Plaintiff's right hand injury after October 12, 2001. (Baker Aff., Exh. A, ¶ 35).

PIETRAGALLO, BOSICK & GORDON LLP

/s/ Elizabeth M. Yanelli
ELIZABETH M. YANELLI, ESQUIRE
Pa. I.D. #86932
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219

(412) 263-2000

*Attorney for Defendants,
Mark Baker, D.O. and
Dan Telega, PA*

Dated: December 9, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT** was served via United States First-Class Mail, postage prepaid, this 9th day of December, 2005, upon the following non-ECF user:

Tyrone Green - EP-4593
SCI Smithfield
1120 Pike Street
P.O. Box 9999
Huntingdon, PA 16652

   /s/ Elizabeth M. Yanelli
ELIZABETH M. YANELLI, ESQUIRE
Pa. I.D. No. 86932

PIETRAGALLO, BOSICK & GORDON LLP
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA  15219
(412) 263-2000

*Attorney for Defendants,*
*Mark Baker, D.O. and*
*Dan Telega, P.A.*