IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE GREEN, | : | CA. No. 03-149 Erie |
| | : | |
| Plaintiff, | : | |
| | : | District Judge McLaughlin |
| vs. | : | |
| | : | Magistrate Judge Baxter |
| MARTIN HORN, ET AL. | : | |
| | : | *Filed Electronically* |
| Defendants. | : | |
| | : | JURY TRIAL DEMANDED |

**JOINT BRIEF IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT**

AND NOW COME Defendants, Mark Baker, D.O. and Dan Telega, P.A., by and through their attorneys, Elizabeth M. Yanelli, Esquire, and Pietragallo, Bosick & Gordon LLP, and file this Joint Brief in Support of their Joint Motion for Summary Judgment as follows:

**I.    FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY**

This is a *pro se* civil rights action in which Plaintiff, Tyrone Green, alleges that he was denied follow-up treatment for an injury to his right hand due to security reasons at the State Correctional Institution at Albion ("SCI-Albion"). Plaintiff's Amended Complaint alleges that on August 25, 2001, he slipped and fell while exiting the shower, breaking two bones in his right hand. (Amended Complaint, ¶ 1). The following day, on August 26, 2001, he was transported to Millcreek Hospital, where he was allegedly provided with a temporary cast. (Amended Complaint, ¶2). Plaintiff avers that he was scheduled to have the temporary cast removed in two days, at which time he would receive a full cast. (Amended Complaint, ¶ 2). The Amended Complaint alleges that Plaintiff was not rescheduled or transported back to Millcreek Hospital for a "replacement cast." (Amended Complaint, ¶ 2). Plaintiff claims that Mr. Telega told

Plaintiff that he was not transported back to Millcreek Hospital for a permanent full cast because Plaintiff was black, a convict, and gay, per security. (Id.).

The Amended Complaint further alleges that Physician's Assistant, Dan Telega, prematurely confiscated Plaintiff's splint. Plaintiff avers that this was done without the approval of Dr. Ferretti, the orthopedic specialist at Millcreek Hospital. (Amended Complaint Adding New Defendants and Damages, ¶ 2).

Defendants have filed a Motion for Summary Judgment because there is no genuine issue of material fact that, at no time was an a cast ordered to be placed on Plaintiff's hand, and at no time was a cast determined to be medically necessary to treat Plaintiff's condition. (Affidavit of Mark Baker, D.O. ("Baker Aff."), Appendix in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Appendix")[1], Exh. A, ¶¶ 15, 43, 46; Affidavit of Dan Telega ("Telega Aff."), Exh. B, ¶¶ 10-11)). To the contrary, on August 27, 2001, Dr. Mark Baker saw Plaintiff along with Physician's Assistant Dan Telega, and Dr. Baker ordered Plaintiff to be sent to Millcreek Community Hospital for an orthopedic consultation. (See Baker Aff., Exh. A, ¶¶ 11-12; Telega Aff., Exh. B, ¶¶6-7; Plaintiff's Medical Records from SCI-Albion ("SCI-Albion Records"), Exh. C, Physician's Orders, 8/27/01). Although an August 27, 2001 entry in the Progress Notes portion of Plaintiff's medical records from SCI-Albion includes an entry that Plaintiff would be sent to Millcreek Community Hospital via state car for casting, both Dr. Baker and Mr. Telega have stated that this entry in the Progress Notes does not accurately reflect the treatment plan for Plaintiff's injury, and does not accurately reflect Dr. Baker's August 27, 2001 Order that appears in the Physician's Orders portion of Plaintiff's medical

---

[1] All exhibits are found in the Appendix in Support of Defendants' Joint Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, filed simultaneously

chart from SCI-Albion. (See Baker Aff., Exhibit A, ¶¶ 13-15 ; Telega Aff., Exhibit B, ¶¶ 8-11). Also, neither the orthopedic specialists at Millcreek Community Hospital, nor any other medical personnel, ordered Plaintiff to receive a cast, and it was determined that casting was not medically necessary. (Baker Aff., Exhibit A, ¶¶ 16, 18-21; 43 and 46; Millcreek Community Hospital Records ("MCH Records"), Exhibit D).

Furthermore, although Plaintiff complains that he was not returned to Millcreek Community Hospital to receive a cast, where there is no genuine issue of material fact that no medical personnel had ordered Plaintiff to receive a cast or had determined that a cast was medically necessary or appropriate to treat Plaintiff's condition, the SCI-Albion medical staff arranged to have Dr. Ferretti, the orthopedic specialist at Millcreek Community Hospital, treat Plaintiff onsite at SCI-Albion to avoid a security issue of non-emergent outside trips by Plaintiff. Clinical Specialist Rebecca Gould spoke with Dr. Ferretti's staff regarding this security issue and Dr. Ferretti's staff advised that Plaintiff could be evaluated onsite, at SCI-Albion. (Baker Aff., Exh. A, ¶ 23; SCI-Albion Records, Exh. C, Progress Notes, 9/4/01; Progress Notes, 9/20/01; Progress Notes, 10/1/01; Progress Notes, 10/12/01; Consultation Record, 10/12/01; X-ray Report, 10/13/01).

Moreover, at no time did Physician's Assistant Telega or any other medical personnel at SCI-Albion confiscate or discontinue Plaintiff's splint and sling. (Baker Aff., Exh. A, ¶ 33; Telega Aff., Exh. B, ¶ 12). On October 12, 2001, Dr. Ferretti ordered that Plaintiff's splint and sling be removed. (Baker Aff., Exh. A, ¶34; Telega Aff., Exh. B,¶ 13; SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-Ray Report, 10/13/01; Progress Notes, 10/12/01). Dr. Ferretti determined that a splint and sling were no longer medically necessary or appropriate to treat Mr. Green's right

---

with the Defendants' Joint Motion for Summary Judgment and the instant Joint Brief in

hand injury, and in Dr. Baker's opinion, a splint and sling were not medically necessary or appropriate to treat Plaintiff's injury after October 12, 2001. (Baker Aff., Exh. A, ¶ 35; SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-Ray Report, 10/13/01; Progress Notes, 10/12/01).

As set forth in detail below, there is no genuine issue as to any material facts and summary judgment should be granted to Dr. Baker and Mr. Telega as a matter of law.

## II.   ARGUMENT

### A.   Summary Judgment Standard

Summary judgment should be granted if there is no genuine issue as to any material facts and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). District courts should not view a motion for summary judgment as "a disfavorable procedural shortcut," but as "the first opportunity to dispose of meritless cases." Big Apple BMW, Inc. v. BMW of N.A., Inc., 974 F.2d 1358, 1362 (3d Cir. 1992). Disputes are "genuine" only if evidence exists to support both sides. Chelates Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In order to survive summary judgment, the non-moving party must come forward with affirmative evidence to support the elements of his *prima facie* case. Williams v. Borough of Westchester, 891 F.2d 458, 460 (3d Cir. 1989).

### B.   Deliberate Indifference Under the Eighth Amendment

An inmate who claims a violation under 42 U.S.C. Section 1983 on the basis of a failure to provide necessary medical treatment must demonstrate two elements, including that (1) his medical needs were serious, and (2) that the defendants' failure to attend to his medical needs rose to the level of deliberate indifference. Colburn v.

---

Support.

upper Darby Township, 946 F.2d 1017, 1023 (3d Cir. 1991).  To that end, a plaintiff must plead and prove facts to show that the official in question knew of, and disregarded, an excessive risk to inmate health or safety.  Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994) and Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).  Courts have consistently held that prison medical authorities are granted considerable latitude in the diagnosis and treatment of the medical problems of inmate patients.  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir 1979).  As long as a physician exercises his professional judgment, his or her behavior will not constitute a violation of a prisoner's Constitutional rights.  White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); see also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); Coleman v. Frame, 843 F.Supp. 993 (E.D. Pa. 1994).  Furthermore, the right to be free from cruel and unusual punishment does not include the right to treatment of one's choice.  Young v. Quinlan, 760 A. Supp. 351, 358 n. 18 (3d Cir. 1992); White, 897 F.2d at 110.

      **C.**    **There is No Genuine Issue of Material Fact That a Cast Was Not Ordered for Plaintiff's Hand Injury and that a Cast Was Not Medically Necessary to Treat Plaintiff's Hand Injury.**

Summary judgment should be granted in favor of Defendants, Dr. Baker and Mr. Telega, because there is no genuine issue of material fact that casting was not ordered to treat Plaintiff's hand injury, and that it was determined that casting was not medically necessary or appropriate to treat Plaintiff's condition.  According to the medical records from SCI-Albion, on August 25, 2001, Plaintiff was evaluated for a complaint that he fell in the shower, injuring his right hand.  (SCI-Albion Records, Exh. C, Progress Notes, 8/25/01; Baker Aff., Exh. A, ¶ 6).  Plaintiff was placed in the prison infirmary at SCI-Albion and a splint and an Ace wrap were applied to his right hand.  (Id.) He was ordered 800 milligrams of Motrin for pain.  (Id.)  The following day,

on August 26, 2001, Dr. David Bashline evaluated Plaintiff and ordered that an x-ray be taken of Plaintiff's right hand the next morning. SCI-Albion Records, Exh. C, Progress Notes 8/26/01; Baker Aff., Exh. A, ¶ 8). Dr. Bashline also ordered Plaintiff to be released from the prison infirmary, and upon Plaintiff's release from the infirmary, it was noted that the Plaintiff stated that he was "fine" and had no voiced complaints. (Id.). On August 27, 2001, Plaintiff had an x-ray of his right hand at SCI-Albion, which revealed that he had a minimally displaced 4th metacarpal fracture and a "probable old chip at the base of the 5th metacarpal." (SCI-Albion Records, Exh. C, X-ray Report 9/18/01; Baker Aff., Exh. A, ¶ 10).

Significantly, at no time was an order issued to have Plaintiff's hand placed in a cast, and at no time did either Dr. Baker or Mr. Telega determine that a cast was medically necessary or appropriate. (Baker Aff., Exh. A, ¶¶15-16; Telega Aff., Exh. B, ¶ 15). Both Dr. Baker and Mr. Telega saw Plaintiff on August 27, 2001. (SCI-Albion Records, Exhibit C, Progress Notes, 8/27/01; Baker Aff., Exh. A, ¶ 12; Telega Aff., Exh. B, ¶ 6). Dr. Baker ordered Plaintiff to be sent to Millcreek Community Hospital for an orthopedic consultation. (SCI-Albion Records, Exh. C; Baker Aff., Exh. A, ¶12). The August 27, 2001 Order correctly reflects Dr. Baker's order that Plaintiff was to be sent to Millcreek Community Hospital for an orthopedic consultation. (Id.; Baker Aff., Exhbit A, ¶ 12; Telega Aff., Exhibit B, ¶ 7). Although Mr. Telega authored a Progress Note on August 27, 2001 that stated that Plaintiff would be sent to Millcreek Community Hospital for casting, the August 27, 2001 Progress Notes does not accurately reflect the August 27, 2001 Physician's Order or the treatment plan that appears in the Physician's Orders ordering that Plaintiff be transported to Millcreek for an orthopedic consultation. (Baker Aff., Exh. A, ¶ 13-14; Telega Aff., Exh. B, ¶ 9). The records from both SCI Albion and Millcreek Community Hospital reflect that

Plaintiff was, in fact, transported to Millcreek Community Hospital on August 27, 2001, where Dr. Bereczki and Dr. Tony Ferretti, the attending orthopedic specialist, examined Plaintiff. (SCI-Albion Records, Exh. C, Progress Notes, 8/17/01; MCH Records, Exh. D; see also Baker Aff. Exh. A, ¶ 17).

Importantly, at no time did Dr. Tony Ferretti or any medical personnel order a cast for Plaintiff, and at no time did Dr. Ferretti or any other medical personnel determine that casting was medically necessary to treat Plaintiff's condition. (MCH Records, Exh. D; Baker Aff. A, ¶¶ 18-21). Upon physical examination of Mr. Green's right hand, Dr. Bereczki and Dr. Ferretti noted that Plaintiff had diffuse swelling, but that his capillary refill was intact and his right hand showed no neurological deficit. (MCH Records, Exh. D; Baker Aff., Exh. A, ¶ 17). Plaintiff's condition was noted to be "stable" and "improved." (Id.). Dr. Ferretti ordered Plaintiff to receive an ulnar gutter splint and a sling, both of which Plaintiff received that day, and Plaintiff was instructed to rest, apply ice, elevate his right hand, and keep his splint dry. (MCH Records, Exh. D; Baker Aff., Exh. A, ¶¶ 18-20). At no time was a cast ordered. (MCH Records, Exh. D; Consultation Record, 8/27/01; Baker Aff., Exh. A, ¶ 18). The orthopedic specialist did not order Plaintiff to receive a cast and it was determined that a cast was not medically necessary. (MCH Records, Exh. D; Baker Aff., Exh. A, ¶ 19). The follow-up instructions provided at Millcreek, entitled "Orthopedic Instructions," did not include any order that Plaintiff receive a cast to treat his injury. (See MCH Records, Exh. D; Baker Aff., Exh. A, ¶ 20). Plaintiff was ordered to have a follow-up appointment at 2:15 p.m. on September 5, 2001 in the orthopedic clinic. (SCI-Albion Records, Exh. C, Consultation Record, 8/27/01).

It is Plaintiff's bald assertion, without any evidentiary support, that Dr. Ferretti ordered Plaintiff to receive a permanent full cast during Plaintiff's initial appointment

7

at Millcreek Community Hospital on August 27, 2001. Plaintiff has failed to come forward with any evidence that would support his claims of deliberate indifference on the part of these defendants. The undisputed evidence of record demonstrates that no permanent cast was ordered for Plaintiff's condition and that a cast was not medically necessary or appropriate to treat Plaintiff's condition. Accordingly, Defendants Mark Baker, D.O. and Dan Telega, PA should be awarded summary judgment as a matter of law.

> **D. There is No Genuine Issue of Material Fact That Plaintiff Was Not Ordered to Return to Millcreek Community Hospital to Receive a Cast, and That the Orthopedic Specialist from Millcreek Community Hospital Treated Plaintiff's Hand Injury Onsite at SCI-Albion.**

Summary judgment should also be granted in favor of Defendants Baker and Telega because there is no genuine issue of material fact that Plaintiff was not ordered to return to Millcreek Community Hospital to receive a cast, and that Dr. Ferretti, the orthopedic specialist from Millcreek Community Hospital, provided treatment to Plaintiff onsite at SCI-Albion. According to Plaintiff's medical records, on September 4, 2001, Clinical Specialist, Rebecca Gould, was unable to schedule Plaintiff for an offsite visit with Dr. Ferretti at Millcreek Community Hospital due to scheduling and security concerns of non-emergent outside trips. (SCI-Albion Records, Exh. C, Progress Notes, 9/4/01; Baker Aff., Exh. A, ¶ 23). Ms. Gould spoke with Dr. Ferretti's staff regarding this issue, and Dr. Ferretti advised that Plaintiff could be evaluated onsite at SCI-Albion, during the orthopedic clinic, on September 14, 2001. (Id.).

Plaintiff failed to show up for his September 14, 2001 visit. (SCI-Albion Records, Exh. C, Progress Notes, 9/14/01; Baker Aff., Exh. A, ¶ 24). The medical staff followed up with Dr. Ferretti regarding Plaintiff's failure to appear for his September 14, 2001 appointment, and Dr. Ferretti ordered Plaintiff to be seen offsite at Millcreek Community Hospital Orthopedics within two weeks. (Id.; see also SCI-Albion Records,

Exh. C, Consultation 9/14/01; Baker Aff., Exh. A, ¶ 24). Ms. Gould scheduled Plaintiff for an offsite visit with Dr. Ferretti at Millcreek Community Hospital to take place on Wednesday, September 26, 2001. (SCI-Albion Records, Exh. C, Progress Notes, 9/17/01; Baker Aff., Exh. A, ¶ 25). On September 20, 2001, Dr. Ferretti and Physician's Assistant Tammy Mowry reviewed Plaintiff's medical chart and discussed his chart at length. (SCI-Albion Records, Exh. C, Progress Notes, 9/20/01; Baker Aff., Exh. A, ¶ 25). According to the records, Dr. Ferretti ordered that an x-ray be taken of Plaintiff's hand onsite at SCI-Albion and that the film be transported to Millcreek Community Hospital for review by Dr. Ferretti in order to avoid any security issue of non emergent outside trips by Plaintiff. (Id.; see also SCI-Albion Records, Exh. C, Physician's Orders, 9/20/01 and Consultation Record, 9/21/01; Baker Aff., Exh. A, ¶ 26). Further, the medical records reflect that Dr. Ferretti ordered Plaintiff to be rescheduled to be seen at an onsite clinic at SCI-Albion on October 12, 2001 unless he, Dr. Ferretti, deemed it necessary for Plaintiff to be seen prior to October 12, 2001. (SCI-Albion Records, Exh. C, Consultation Records, 9/20/01, 10/12/01; Baker Aff., Exh. A, ¶ 30, ¶ 27). As per Dr. Ferretti's orders, an x-ray of Plaintiff's right hand was taken on September 21, 2001 and was provided to Dr. Ferretti's office that day. (SCI-Albion Records, Exh. C, Consultation Record, 9/21/01; Baker Aff., Exh. A, ¶ 29).

Importantly, Dr. Ferretti reviewed the x-ray of Plaintiff's hand taken on September 21, 2001 and noted that Plaintiff's hand was **"healing well—no medical necessity to send patient offsite."** (SCI-Albion Records, Exh. C, Progress Notes 10/1/01(emphasis added); Baker Aff., Exh. A, ¶ 30). Again, Dr. Ferretti did not recommend that any cast be placed on Plaintiff's hand, no cast was medically necessary or appropriate, and Dr. Ferretti determined that there was no need to send Plaintiff offsite to Millcreek Community Hospital because Plaintiff's hand was healing

9

well. (SCI-Albion Records, Exh. C, Consultation Record 9/20/01; Baker Aff. A, ¶¶ 18-21).

On October 12, 2001, Dr. Ferretti examined Plaintiff's right hand at the orthopedic clinic at SCI-Albion and ordered that Plaintiff's splint be removed. (SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-ray Report, 10/13/01; and Progress Notes, 10/12/01; Baker Aff., Exh. A, ¶ 31). Significantly, Dr. Ferretti did not order casting for Plaintiff's hand, and did not order Plaintiff to be transported to Millcreek Community Hospital for follow up. (Id.). Rather, Dr. Ferretti examined Plaintiff's right hand at the orthopedic clinic at SCI-Albion and ordered that Plaintiff's splint be removed. (SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-ray Report, 10/13/01; and Progress Notes, 10/12/01; Baker Aff., Exh. A, ¶ 31). Also on October 12, 2001, Dr. Ferretti ordered another x-ray of Plaintiff's right hand and physical therapy.

There is no genuine issue of material fact that Plaintiff was not ordered to return to Millcreek Community Hospital to receive a cast on his right hand. As demonstrated in detail above, the evidence of record reflects that Plaintiff's hand injury was healing well, that various medical personnel had determined that there was no reason to sent Plaintiff offsite for treatment, that no medical personnel had order casting, and that Plaintiff continued to be closely followed by the SCI-Albion medical staff. Accordingly, summary judgment should be granted in favor of Dr. Baker and Mr. Telega as a matter of law.

**E.     There is No Genuine Issue of Material Fact That Plaintiff Received Medical Treatment That Was Medically Necessary and Appropriate for his Condition, and That Plaintiff's Splint and Sling Were Not Confiscated.**

There is also no genuine issue of material fat that Plaintiff received medically necessary and appropriate treatment for his condition, and that Plaintiff's splint and sling were not confiscated by Mr. Telega.  Rather, on October 12, 2001, Dr. Ferretti examined Plaintiff's right hand at the orthopedic clinic at SCI-Albion and ordered that Plaintiff's splint be removed.  (SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-ray Report, 10/13/01; and Progress Notes, 10/12/01; Baker Aff., Exh. A, ¶ 31).  Also on October 12, 2001, Dr. Ferretti ordered another x-ray of Plaintiff's right hand and physical therapy. The October 12, 2001 x-ray revealed moderately advanced healed fractures.  (SCI-Albion Records, Exh. C, X-Ray Report, 10/13/01).  Dr. Baker also reviewed the x-ray report and determined that the findings were not clinically significant.  (Id.; see also Baker Aff., Exh. A, ¶ 32).  On October 12, 2001, Dr. Ferretti ordered Plaintiff's splint and sling to be removed because they were no longer medically necessary or appropriate to treat Plaintiff's injury. (SCI-Albion Records, Exh. C, Consultation Record, 10/12/01; X-Ray Report, 10/13/01; Progress Notes, 10/12/01; Baker Aff., Exh. A, ¶ 34).  Dr. Baker also found that a splint and sling were not medically necessary or appropriate to treat Plaintiff's right hand injury after October 12, 2001.  (Baker Aff., Exh. A, ¶ 35).

Although Plaintiff may disagree with the medical decision to remove his splint and sling, such disagreement does not support a claim of deliberate indifference to a serious medical need.

Furthermore, after Dr. Ferretti ordered Plaintiff's splint and sling to be removed, Plaintiff's condition continued to be monitored by the medical staff to the extent that

11

Plaintiff signed up for sick call to complaint of symptoms associated with his right hand. For example, on October 25, 2001, Plaintiff complained of a rash on his right hand. (SCI-Albion Records, Exh. C, Progress Notes 10/25/01; Baker Aff., Exh. A, ¶ 36). On observation, Mr. Telega noted that Plaintiff had a scaly patch of skin on his right hand, that Plaintiff had almost full range of motion in his right wrist, and that Plaintiff's grip strength in his right hand was at a level 5 out of 5. (Id.). Dr. David Bashline approved and co-signed Mr. Telega's notation in the Physician's Orders dated October 25, 2001 for orders that Plaintiff receive Tolnaftate cream for his dry skin rash on his right hand. (SCI-Albion Records, Exh. C, Progress Notes, 10/25/01; Physician's Orders, 10/25/01; Baker Aff., Exh. A, ¶ 37). Mr. Telega also instructed and demonstrated home physical therapy exercises for Plaintiff's right hand. (Id.). On October 31, 2001, Plaintiff failed to show up for sick call. (SCI-Albion Records, Exh. C, Progress Notes, 10/31/01).

Plaintiff did not complain of any symptoms associated with his right hand again until December 20, 2002, when he complained of "aching" with no acute trauma. (SCI-Albion Records, Exh. C, Progress Notes, 12/20/02; Baker Aff., Exh. A, ¶ 39). Plaintiff had previously been placed in the Restricted Housing Unit ("RHU") on December 7, 2002. (See SCI-Albion Records, Exh. C, Progress Notes, 12/7/02). On observation, Plaintiff was noted to have full range of motion in his right wrist and Dr. Baker ordered 800 milligrams of Motrin for 14 days to treat Plaintiff's symptoms. (SCI-Albion Records, Exh. C, Progress Notes, 12/20/02; Physician's Orders 12/20/02; Baker Aff., Exh. A, ¶ 39). Plaintiff did not complain of any symptoms associated with his right hand injury again until January 22, 2003, when he complained of right hand pain and gastrointestinal ("GI") upset. (SCI-Albion Records, Exh. C, Progress Notes, 1/22/03; Baker Aff., Exh. A, ¶ 40). Dr. Baker prescribed 800 milligrams of Motrin, for

30 days, for pain, and instructed that the medication be taken with food to prevent GI upset. (Id). Dr. Baker also prescribed Carafate, for 30 days, in response to Plaintiff's complaints of GI upset. (SCI-Albion Records, Exh. C, Physician's Orders, 1/22/03; Baker Aff., Exh. A, ¶ 40).

Plaintiff did not complain of any symptoms associated with his right hand injury again until April 28, 2003, when he requested a refill of Motrin and Carafate for complaints of right hand pain. (SCI-Albion Records, Exh. C, Progress Notes, 4/28/03; Baker Aff., Exh. A, ¶ 41). On observation, Mr. Green's right hand revealed no gross deformities and his range of motion in his right hand was within normal limits. (Id). The neurovascular aspects of his hand were also found to be intact. (Id.). Dr. David Bashline ordered 600 milligrams of Motrin for 30 days and a refill of Carafate for 30 days. (Id.; see also SCI-Albion Records, Exh. C, Physician's Orders, 4/28/03).

On March 19, 2004, x-rays of Mr. Green's right hand and right wrist were taken. The March 19, 2004 x-ray of Mr. Green's right hand revealed no acute fracture or significant deformity, and there were no significant arthritic changes. (SCI-Albion Records, Exh. C, X-ray Report, 3/18/04; Baker Aff., Exh. A, ¶ 42). The March 19, 2004 x-ray of Mr. Green's right wrist showed an old healed fracture of the base of the 4th metacarpus with no acute fracture, subluxation or deformity; the carpal bones were intact. These findings were determined not to be clinically significant. Id.

Thus, the evidence of record shows that Mr. Telega did not confiscate Plaintiff's splint and sling. Rather, both Dr. Ferretti and Dr. Baker had determined, in their medical judgment, that a splint and sling were no longer medically necessary to treat Plaintiff's injury as of October 12, 2001. There is no genuine issue of material fact that Plaintiff's splint and sling were not prematurely confiscated, and that even after the splint and sling were removed, the SCI-Albion medical staff continued to closely

follow Plaintiff's condition. Therefore, summary judgment should be entered in favor of Dr. Baker and Mr. Telega as a matter of law.

### III.   CONCLUSION

For all of the above-stated reasons, Defendants Mark Baker, D.O. and Physician's Assistant Dan Telega respectfully request that their Joint Motion for Summary Judgment be granted as a matter of law.

PIETRAGALLO, BOSICK & GORDON LLP

 _/s/ Elizabeth M. Yanelli_____
ELIZABETH M. YANELLI, ESQUIRE
Pa. I.D. #86932
One Oxford Centre, 38th Floor
Pittsburgh, PA  15219

(412) 263-2000

*Attorney for Defendants,
Mark Baker, D.O. and
Dan Telega, PA*

Dated:  December 9, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **JOINT BRIEF IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT** was served via United States First-Class Mail, postage prepaid, this 9th day of December, 2005, upon the following non-ECF user:

>Tyrone Green - EP-4593
>SCI Smithfield
>1120 Pike Street
>P.O. Box 9999
>Huntingdon, PA 16652

>_/s/ Elizabeth M. Yanelli_
>ELIZABETH M. YANELLI, ESQUIRE
>Pa. I.D. No. 86932
>
>PIETRAGALLO, BOSICK & GORDON LLP
>The Thirty-Eighth Floor
>One Oxford Centre
>Pittsburgh, PA  15219
>(412) 263-2000
>
>*Attorney for Defendants,*
>*Mark Baker, D.O. and*
>*Dan Telega, P.A.*