# ATTACHMENT   A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TYRONE GREEN,                          )
                                       )      **Civil Action No. 03-149E**
                **Plaintiff,**        )
                                       )      **Judge Sean J. McLaughlin**
        **V.**                    )      **Mag. Judge Susan Paradise Baxter**
                                       )
**MR. EDWART T. BRENNAN;**              )
**WILLIAM J. WOLFE; MAXINE**            )
**OVERTON; ASSIST. SUPER.**             )
**WILLIAM BARR; DR. BAKER;**            )
**P.A. TELEGA,**                        )
                                       )
          **Defendants.**   )

## DECLARATION OF MAXINE OVERTON

I, Maxine Overton, verify that the foregoing is true and correct to the best of my knowledge and belief:

1.      I am employed by the Commonwealth of Pennsylvania Department of Corrections as the Corrections Health Care Administrator at the State Correctional Institution at Albion (hereinafter, SCI-Albion).

2.      I have reviewed the attached complaint of inmate Tyrone Green, inmate number EP-4593, (hereinafter, Green) filed in the above-captioned matter and am aware that inmate Green contends that he received inadequate medical care while incarcerated at SCI-Albion in late 2001. See Exhibit 1.

3.      On August 25, 2001, Green reported that he slipped coming out of the shower at SCI-Albion and injured his right hand. See Exhibit 2, at p. 1 (entry at 8-25-01); and Exhibit 3.

4.      In preparing this declaration, I have reviewed Green's medical records related to this incident, including: the Progress Notes (see Exhibit 2); Millcreek

Community Hospital (hereinafter, MCH) records (see Exhibit 3); Physician's Orders (see Exhibit 4); Medication Administration Record (see Exhibit 5); SCI-Albion Healthcare Item Receipts (see Exhibit 6); X-Ray Reports (see Exhibit 7); and Consultation Records (see Exhibit 8).

5.    It is apparent from these records that Green received an abundance of care from healthcare providers both within and outside of SCI-Albion.

6.    Immediately following his injury on August 25, 2001, Green was seen in the SCI-Albion infirmary by John Purvis, RN. See Exhibit 2, at p. 1 (entry at 8-25-01); and Exhibit 4, at p. 1 (entry at 8-25-01). Nurse Purvis examined Green's hand, gave him a cock-up splint and ace bandage to immobilize the area, prescribed him 800 mg of Motrin, and advised that Green apply ice to the injury. Id.

7.    Green's Medication Administration Records for August 25, 2001 show that he was indeed given the 800 mg of Motrin and ice for his hand. See Exhibit 5, at p. 1 (entries at 8-25).

8.    The next day, on August 26, 2001, Green's hand was examined by James McDuff, RN. See Exhibit 2, at pp. 1-2 (entries at 8-26-01). Nurse McDuff noted that the splint and ace bandage were in tact and that Green declined medication and ice. Id. Later that day, Green was taken back to the infirmary and examined by Dr. David Bashline, DO. Id. Dr. Bashline directed that Green maintain use of the splint and ace bandage, and ordered that an x-ray of Green's hand be taken in the institution the next day. Id.; and Exhibit 4, at p. 2 (entry at 8-26-01).

9.    An SCI-Albion Health Care Item Receipt dated August 26, 2001 and signed by Green confirms that Green received the cock-up splint and ace bandage. <u>See</u> Exhibit 6.

10.    Green's hand was x-rayed at SCI-Albion on August 27, 2001, and the x-ray was sent to MCH for evaluation. <u>See</u> Exhibit 2, at pp. 2-3 (entries at 8-27-01); <u>and</u> Exhibit 3; <u>and</u> Exhibit 7, at p. 1 (entry at 8-27-01). The X-Ray Reports and Millcreek records show that Green was diagnosed with a displaced right ring finger and an avulsion (i.e., bone splinter) on his right pinky finger. <u>See</u> Exhibit 3 (MCH records); <u>and</u> Exhibit 7, at p. 1 (X-Ray Reports, entry at 8-27-01); <u>and</u> Exhibit 8, at pp. 1-2 (entries at 8-27-01).

11.    Later in the morning of August 27, 2001, in light of the results of this x-ray, SCI-Albion medical staff – specifically, Nurses Susan Pittsenbarger and Marcie Kish, Dr. Mark Baker, and Physician's Assistant D. Telega – sent Green to MCH for treatment. <u>See</u> Exhibit 2, at pp. 2-3 (entries at 8-27-01); <u>and</u> Exhibit 4, at pp. 2-3 (entries at 8-27-01).

12.    Green was examined at MCH, given a gutter splint and sling for his hand, and advised to apply ice to the injury. <u>See</u> Exhibit 3. A follow-up appointment was scheduled for September 5, 2001. <u>Id.</u>; <u>and</u> Exhibit 8, at p. 1 (entries at 8-27-01).

13.    Upon return to SCI-Albion from MCH, Plaintiff was given ice for his hand, Tylenol, and Ibuprofen. <u>See</u> Exhibit 5, at pp. 1-3 (entries for 8-27-01). The gutter splint and sling were confirmed in-tact by SCI-Albion Nurse Tom Hickey. <u>See</u> Exhibit 2, at pp. 1-2 (entries at 8-27-01).

14.    On September 4, 2001, Dr. T. Feretti was consulted regarding Plaintiff's follow-up appointment. <u>See</u> Exhibit 2, at p. 3 (entries at 9-4-01). It was determined that,

3

in light of scheduling and security concerns, Green would be seen by Dr. Feretti at the SCI-Albion orthopedic clinic on September 14, 2001, instead of being transported back to MCH to see him. Id.

15.    Green was a "no-show" for his September 14, 2001 appointment with Dr. Feretti in the SCI-Albion orthopedic clinic. See Exhibit 2, at p. 3 (entry at 9-14-01); and Exhibit 8, at p. 3 (entry at 9-14-01). In light of Green's absence from this appointment, Dr. Feretti recommended that Green be scheduled for a follow-up appointment with him at MCH in two weeks. See Exhibit 2, at p. 3 (entry at 9-14-01). This MCH follow-up appointment was approved by SCI-Albion medical staff, Dr. Bashline and Nurse Richard W. Carter, and scheduled for September 26, 2001. See Exhibit 2, at p. 3 (entry at 9-17-01); and Exhibit 4, at p. 3 (entry at 9-17-01).

16.    On September 20, 2001, another x-ray of Green's injured right hand was ordered by SCI-Albion Nurse Susan Martin. See Exhibit 4, at p. 4 (entry at 9-20-01).

17.    On the morning of September 21, 2001, Green was examined by SCI-Albion Physician's Assistant Telega, who noted that Green "wants a cast," but "admits to taking splint off to clean hand on a regular basis." See Exhibit 2, at p. 4 (entries at 9-21-01). P.A. Telega also noted that, despite his complaints, Green's gutter splint was in tact. Id.

18.    In the afternoon of September 21, 2001, an x-ray was taken of Green's injured right hand, with the gutter splint on, and sent to Dr. Feretti for review. See Exhibit 2, at p. 4 (entries at 9-21-01); and Exhibit 7, at p. 1 (entry at 9-21-01); and Exhibit 8, at p. 4 (entry at 9-21-01). The September 21, 2001 x-ray showed that, as set in

4

the gutter splint, Green's injured hand was aligned correctly for healing. See Exhibit 7, at p. 1 (entry at 10-10-01).

19.    Upon review of the September 21, 2001 x-ray, Dr. Feretti rescheduled Green's follow-up appointment from September 26 at MCH to October 12, 2001 at the SCI-Albion orthopedic clinic, noting that Green's hand was healing well and there was "no medical necessity to send [Green] offsite." See Exhibit 2, at p. 5 (entry at 10-01-01); and Exhibit 8, at p. 6 (entry at 10-12-01).

20.    On October 12, 2001, Green was seen at the SCI-Albion orthopedic clinic and his injured right hand was x-rayed again, this time, without the splint on. See Exhibit 2, at p. 5 (10-12-01); and Exhibit 7, at p. 2 (entry at 10-12-01); and Exhibit 8, at pp. 5-6 (entries at 10-12-01).

21.    The October 12, 2001 x-ray showed that Green's hand was healing. See Exhibit 7, at p. 2 (entry at 10-12-01).

22.    Green was examined by SCI-Albion Physician's Assistant Telega on October 25, 2001, at which time he requested physical therapy for his hand. See Exhibit 2, at p. 5 (entry at 10-25-01). P.A. Telega showed Green how to do physical therapy exercises for his hand in his cell and prescribed Green 600 mg of Motrin. Id.

23.    Green's Progress Notes and Physician's Orders show that he was seen by numerous SCI-Albion and outside medical professionals after this October 25, 2001 examination, but did not voice any complaints or concerns about his right hand for over a year. See Exhibit 2, at pp. 5-8 (entries at 10-31-01; 11-28-01; 3-5-02; 3-15-02; 3-25;02-4-4-02; 4-23-02; 4-24-02; 5-17-02; 6-5-02; 9-27-02; 12-7-02) and Exhibit 4, pp. 5-8

(entries at 11-19-01; 11-28-01; 2-11-02; 3-15-02; 4-23-02; 5-17-02; 8-5-02; 8-12-02; 9-3-02; 9-27-02; 11-4-02).

24.     Green next complained about pain in his right hand on December 20, 2002 during an examination by P.A. Telega. See Exhibit 2, at p. 8 (entry at 12-20-02). In response to his complaints, Green was prescribed 800 mg Motrin for fourteen days. Id.; and Exhibit 4, at p. 8 (entry at 12-20-02).

25.     Upon Green's complaints, at their next visit on January 22, 2003, that the 800 mg of Motrin was upsetting his stomach, P.A. Telega lowered Green's dosage to 300 mg Motrin. See Exhibit 2, pp. 8-9 (entries at 1-22-03). P.A. Telega authorized Green to have the 300 mg Motrin refilled two times, and to take 800 mg Motrin doses when needed. Id.; and Exhibit 4, at p. 8 (entry at 1-22-03).

26.     Again, Green met with SCI-Albion medical professionals numerous times for several months without voicing any complaints or concerns about his hand (see Exhibit 2, at p. 9 (entries at 2-20-03; 3-20-03); and Exhibit 4, at p. 9 (entry at 2-3-03)), next requesting a refill of his Motrin prescription on April 28, 2003, which was granted by Dr. Bashline. See Exhibit 2, at p. 9 (entry at 4-28-03); and Exhibit 4, at p. 9 (entry at 4-28-03).

27.     Green was again silent with regard to his hand for nearly a year. See Exhibit 4, at pp. 9-10 (entries at 5-27-03; 6-11-03; 7-1-03; 7-7-03).

28.     Upon transfer to a new institution, Green renewed his complaints of pain, and on March 18, 2004, another x-ray was ordered of Green's right hand. See Exhibit 7, at p. 3 (entry at 3-18-04). This x-ray was done on March 19, 2004 and reviewed by Dr. Peter G. Gregory on March 22, 2004. Id., (entries at 3-19-04; 3-22-04). This x-ray

revealed that the above-described injury to Green's right hand was healed and that there
were "no new or acute fractures" nor "significant arthritic changes." Id.

   The above averments have been made subject to the penalties of 28 U.S.C. §1746
relating to sworn falsification to authorities, which provides that if I make knowingly
false statements, I may be subjected to criminal penalties.

Date: 11/29/05

Maxine Overton

**Maxine Overton**

7

# EXHIBIT  1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


Tyrone Green                    - Ca, No. o3149- Erie
    Plaintiff                   - District Judge Mclauglin
    V.                          - Magistrate Judge Baxter
Martin Horn, et al.             -


AMENDED COMPLAINT ADDING

NEW DEFENDANTS AND DAMAGES

Plaintiff would humbly like to add physician's assistant telega,
employed by S.C.I Albion medical Department.


Pa Telega pre-maturely confasated plaintiff splint while plain-
tiffs hand was still broken. Pa Telega did so without Dr. ferrettis
approval, Thus causing plaintiff severe pain and discomfort and
prolong the healing process causing further damage to plaintiffs
hand. Pa Telega stated to Plaintiff that plaintiff had three strikes
against for not getting transperted, and that was because plaintiff
was, black, convict and gay, per security
There is no prejudice to the defendants, because there is no new
claim or allegation. On page 3, of plaintiff's amended complaint
plaintiff put the defendant on notice of the above event. plain-
 tiff is just adding the person's name who was responsible.
Plaintiff was unable to read the medical records pertaining to
this event until defendant  Baker filed its motion to dismiss
plaintiff's amended petition.

2-

## AMENDMENT TO DAMAGES SOUGHT

For the charges presented to this court concerning the total
complaint. Plaintiff seeks to be rewarded the following paid
by each defendant or the agency they work for;

1) pain and suffering $2oo,ooo

2) Neglances $2oo,ooo

3) Punitive damages $2oo,ooo

4)Compensatory $65,ooo

5) Declartory damages; whatever our Honor deems fit.

6) Discrimination; $5oo,ooo

7) Cruel and unusual punishment; $1oo,ooo and sentence reduction
for violation of double jeopardy by plaintiff twice being punished
in state custody.

CertiFicate oF Service

I hereby certify that a true and correct
copy of the foregoing original complaint,
Amended complaint and propose Amended complaint
was served via Institutional mail this day
of 10-5-05 upon:

Scott Bradley, Esquire
Litigation Section
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219


Elizabeth M. Yanelli, Esquire
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA 15219


Date: 10-5-05            (S) Tyrone Deen

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA.

Tyrone Green
    (PLAINTIFF)               .

    V                     .

Martin Horn,                   .

Dr. Mark Baker,              .

William Barr and Captain of S.C.I   .      C.A. No. 03-149 Erie

Albion Security (John Doe), Et Al,   .

---

Amended Complaint

---

1). On 8-25-01 Plaintiff was exiting the shower, when he slip and fell
in a puddle of soap and water.

2). As a result of Plaintiff slip and fall, he broke two bones in his
right hand.

3). On 8-26-01, Plaintiff was transported to Millcreek Hospital, wherein
Plaintiff was issued a temporary cast which was placed on Plaintiff's
hand.

4). Plaintiff was given said temporary cast due to the immense swelling
in his right hand.

5). Plaintiff was scheduled by the Physician(s) at Millcreek to return
in two(2) days once the swelling subdued, so that a permanent cast
could be placed on Plaintiff'S hand to stablize the two broken bones.

6). The Plaintiff was never returned to Millcreek Hospital for his
scheduled follow-up care.

7). The medical records provided to Plaintiff states; for "scheduling
and security concerns'' Plaintiff was not transported back to Millcreek
for follow-up care.

8). The denial to allow Plaintiff's scheduled follow-up care by defendants
Barr, Baker, Security Capt. John Doe (was for non-medical reasons).

9). The actions of defendants Baker, Barr, and Security Capt. John Doe
was deliberately indifference to Plaintiff serious medical need.

10). As a result of defendants actions, Plaintiff's hand was never stablized
during it's healing process, thus putting Plaintiff in severe pain.

11).  Plaintiff is now on daily medication orthritus.

12).  The actions of defendants, Baker, Barr and John Doe in deny Plaintiff follow-up medical care constitute deliberate indefference to a serious medical need under the law of Pennsylvania.

Wherefore, Plaintiff request that the court grant the following relief:

A. Issue a declaratory judgment stating that:

The denial of follow-up medical treatment to Plaintiff by defendants Barr, Baker and John Doe violated Plaintiff 8th and 14th Amendment and constitute deliberate indifference under the State and Federal law.

B. Award compensatory damages in the following amount:

$100,000 jointly and severally against defendants Barr, Baker, Security Capt. John Doe for physical and emotional injuries sustained as a result of Plaintiff being denied follow-up medical care.

### UNSWORN DECLARATION

I, Tyrone Green hereby sware that the said Amended complaint and response to defendants motion to dismiss is true, and is being served to the Attorney of defendants on this date  /-/8· 05

C.C. Robert S. Englesburg
564 Forbes Ave
MANor Complex
Pittsburgh, PA 15219

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Name and address of Plaintiff:

MR. TYRONE GREEN    EP- 4593
10745- ROUTE 18
ALBION, PENN., 16475-0002

v.

Full name, title, and business address
of each defendant in this action:

1. MR. MARTIN F. HORN; FORMER SECRETARY OF D.O.C.
2520 LISBURN RD., P.O. BOX 598
CAMP HILL, PENN., 17001-0598

2. MR. JEFFREY A. BEARD, Ph.D.; SECRETARY OF D.O.C.
2520 LISBURN RD., P.O. BOX 598
CAMP HILL, PENN., 17001-0598
(use additional sheets, if necessary. DEFENDANTS CONT. NEXT PAGES
Number each defendant.)

Plaintiff brings this action against the above named and identified defendants on the following cause of action:

I.    Where are you now confined? STATE CORRECTIONAL INSTITUTION OF ALBION.

What sentence are you serving? LIFE.

What court imposed the sentence? WEST CHESTER COUNTY COURT.

II.    Previous Lawsuits
A. Describe any and all lawsuits in which you are a plaintiff which deal with the same facts involved in this action. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to the previous lawsuit

Plaintiffs: _____ NO _____

Defendants _____ NO _____

2. Court (if federal court, name the district; if state court, name the county) and docket number.
NONE.

3. MRS. CATHERINE McVEY, DIRECTOR OF BUREAU OF HEALTH CARE SERVICES

2520 LISBURN RD. P.O. BOX 598

CAMP HILL, PENN., 17001-0598

4. MR. EDWARD T. BRENNAN, FORMER SUPERINTENDANT OF S.C.I.-ALBION

PO 745, ROUTE-18

ALBION, PENN., 16475-0002

5. MR. WILLIAM J. WOLFE, SUPERINTENDANT OF S.C.I.-ALBION

10745, ROUTE-18

ALBION, PENN., 16475-0002

6. MRS. MAXINE OVERTON, CORRECTIONS HEALTH CARE ADMINISTRATOR

10745, ROUTE 18

ALBION, PENN., 16475-0002

7. MR. RICK FOGLE, INSTITUTIONAL SAFETY MANAGER

10745, ROUTE-18

ALBION, PENN. 16475-0002

8. MR. TIM HAMETZ, INSTITUTIONAL HOUSING UNIT MANAGER

10745, ROUTE-18

ALBION, PENN., 16475-0002

9. ANY ET. AL. DEFENDANTS NOT LISTED HEREIN THAT ARE A SUPERVISING

AGENCY OR CONTRACTOR OUTSIDE THE DEPT. OF CORR. FOR WHOM ANY

LISTED DEFENDANT WAS OR IS AN EMPLOYEE OR REPRESENTATIVE THEREOF.

1. DEFENDANT, MR. TIM HAMETZ IS THE UNIT MANAGER FOR F-UNIT, EMPLOYED AT S.C.I.-ALBION. HE IS GENERALLY RESPONSIBLE FOR THE CARE, CUSTODY, AND CONTROL OF ALL INMATES HOUSED ON HIS HOUSING UNIT. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

2. DEFENDANT, MR. RICK FOGLE IS THE INSTITUTION'S SAFETY MANAGER, EMPLOYED AT S.C.I.-ALBION. HE IS GENERALLY RESPONSIBLE FOR INSURING THE SAFETY OF THE INSTITUTION, ADMINISTRATION AND/OR EMPLOYEES, AND INMATES. HE ASSUMES THE RESPONSIBILITY OF IN-VESTIGATING SITUATIONS AND/OR REPORTS WHERE SAID MENTIONED INDIVIDUALS' SAFETY IS PLACED IN IMMEDIATE OR EMINATE DANGER. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

3. DEFENDANT, MRS. MAXINE OVERTON IS THE INSTITUTION'S CORRECTIONS HEALTH CARE ADMINISTRATOR EMPLOYED AT S.C.I.-ALBION. SHE IS GENERALLY RESPONSIBLE FOR ENSURING THE PROVISIONS OF MEDICAL CARE FOR PRISONERS, FOR SCHEDULING MEDICAL APPOINTMENTS OUTSIDE THE INSTITUTION WHEN AN INMATE NEEDS SPECIALIZED TREATMENT OR EVALUATIONS AND IS THE ASSIGNED GRIEVANCE OFFICER FOR GRIEVANCES PERTAINING MEDICAL CONCERNS. SHE IS BEING SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITIES.

4. DEFENDANTS, MR. EDWARD T. BRENNAN - FORMER SUPERINTENDANT - AND MR. WILLIAM J. WOLFE, SUPERINTENDANT; BOTH FORMER AND CURRENT SUPERINTENDANTS WERE/ARE RESPONSIBLE FOR THE OVERALL

CARE, CUSTODY, AND CONTROL AND MANAGEMENT OF ALL INMATES HOUSED WHILE AT S.C.I. - ALBION. THEY ARE BOTH BEING SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

5. DEFENDANT, MRS. CATHERINE McVEY, IS THE DIRECTOR OF BUREAU OF HEALTH CARE SERVICES OF THE DEPARTMENT OF CORRECTIONS WHO IS GENERALLY RESPONSIBLE FOR THE HEALTH CARE SERVICES ADMINISTERED TO INMATES THROUGHOUT THE DEPARTMENT OF CORRECTIONS. SHE IS BEING SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITIES.

6. DEFENDANTS, MR. MARTIN F. HORN - FORMER SECRETARY OF THE D.O.C. - AND MR. JEFFREY A. BEARD, Ph.D., SECRETARY OF D.O.C.; BOTH FORMER AND CURRENT SECRETARYS OF THE DEPARTMENT OF CORRECTIONS WERE/ARE RESPONSIBLE FOR THE CARE, CUSTODY, CONTROL, AND MANAGEMENT OF ALL INMATES THROUGHOUT THE ENTIRE DEPARTMENT OF CORRECTIONS. BOTH ARE BEING SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

7. ANY ET. AL. DEFENDANTS NOT LISTED HEREIN THAT ARE A SUPERVISING AGENCY OR CONTRACTOR OUTSIDE THE DEPARTMENT OF CORRECTIONS FOR WHOM ANY LISTED DEFENDANT WAS/IS AN EMPLOYEE OR REPRESENTATIVE THEREOF. THEY ARE BEING SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

3. Name of judge to whom case was assigned  NONE

4. Disposition (For example:  Was the case dismissed?  Was it appealed?  Is it still pending?)  NONE

NONE

5. Approximate date of filing lawsuit  NONE

6. Approximate date of disposition  NONE

B.  Prior disciplinary proceedings which deal with the same facts involved in this action:

Where?  NONE
When?  NONE
Result:  NONE


III.  What federal law do you claim was violated?  THE EIGHTH (8th) & Fourteenth (14th) AMENDMENTS OF THE UNITED STATES CONSTITUTION.

IV.  Statement of Claim

(State here as briefly as possible the **facts** of your case.  Do not give any legal arguments or cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Use as much space as you need.  Attach extra sheet if necessary.)

A.  Date of event:  AUGUST 25, 2001.

B.  Place of event:  S.C.I. - ALBION, F.A HOUSING UNIT SHOWER AREA.

C.  Persons involved--name each person and tell what that person did to you:  1. ON AUGUST 25, 2001, PLAINTIFF WAS EXITING THE SHOWER WHEN HE SLIPPED AND FELL DUE TO COLLECTED WATER IN AND AROUND THE SHOWER AREA. AS A RESULT OF PLAINTIFF'S SLIP AND FALL, HE BROKE TWO (2) BONES IN HIS RIGHT HAND. THERE WAS NO MATS OR ANY OTHER SORT TO PREVENT THIS ACCIDENT 2. ON AUGUST 26, 2001, PLAINTIFF WAS TRANSPORTED TO MILLCREEK HOSPITAL WHERE IN PLAINTIFF WAS ISSUED A TEMPORARY CAST WHICH WAS PLACED UPON PLAINTIFF'S BROKEN HAND. PLAINTIFF WAS GIVEN SAID TEMPORARY CAST DUE TO THE IMMENSE SWELLING IN HIS RIGHT HAND. PLAINTIFF WAS SCHEDULED BY TENDING PHYSICIAN(S) TO HAVE THE TEMPORARY CAST REMOVED IN TWO (2) DAYS TO HAVE REPLACED WITH FULL CAST. PLAINTIFF WAS NEVER RESCHEDULED OR TRANSPORTED BACK TO MILLCREEK HOSPITAL FOR HIS REPLACED CAST BY THE INSTITUTION.

STATEMENT OF CLAIMS CONT.

DISCUSSED THE ALLEGATIONS SURROUNDING PLAINTIFF'S GRIEVANCE AND AT THE CONCLUSION OF THE MEETING, PLAINTIFF VIEWED THE GRIEVANCE AS BEING UNRESOLVED.

4.  PLAINTIFF RECIEVED THE INITIAL REVIEW RESPONSE FROM MR. TIM NAMETZ ACKNOWLEDGING THAT PLAINTIFF DID INFACT FALL AND THAT PLAINTIFF'S SUGGESTION OF PLACING MATS ON THE FLOORS IN AND AROUND THE SHOWER WARRENTED MERIT " IF THERE IS A HIGH INCIDENCE OF SLIPS ON THE CERAMIC TILES." MR. TIM NAMETZ SUPPOSEDLY FORWARDED A COPY OF PLAINTIFF'S GRIEVANCE TO THE INSTITUTION'S SAFETY MANAGER, MR. RICK FOGLE FOR FURTHER REVIEW. PLAINTIFF HAS NOT RECIEVED ANY NO- TICES OF THE SAFETY MANAGERS REVIEW. PLAINTIFF APPEALED THE GRIEV- ANCE OFFICER'S RESPONSE TO THE SECRETARY'S OFFICE OF INMATE GRIEV- ANCES AND APPEALS.

5.  ON SEPTEMBER 25, 2001, PLAINTIFF FILED ANOTHER GRIEVANCE CITING THAT MILLCREEK HOSPITAL ISSUED HIM A TEMPORARY CAST WITH INSTRUCTIONS FOR PLAINTIFF TO BE RETURNED TO THE HOSPITAL FOR A FULL CAST. THE INSTITUTION'S MEDICAL DEPARTMENT FAILED TO ADHERE TO PHYSICIANS INSTRUCTIONS FOR RETURNING PLAINTIFF FOR HIS INTENDED FULL CAST. PLAINTIFF IS NO MEDICAL PHYSICIAN BUT, HAS ENOUGH COMMON SENSE TO KNOW THAT THE PRESENT CONDITION OF HIS RIGHT HAND IS DUE TO THE LACK OF RESPONSIBILITY ON THE BEHALF OF THE INSTITUTION'S MEDICAL DEPARTMENT. PLAINTIFF IS NOW ON DAILY MEDICATIONS.

6.  PLAINTIFF'S GRIEVANCE DATED SEPTEMBER 25, 2001, WAS FORWARDED TO GRIEVANCE OFFICER, MRS. MAXINE OVERTON, WHO THEN SCHEDULED TO MEET WITH PLAINTIFF ON THE ALLEGATION(S) RAISED WITHIN HIS

2.a.

STATEMENT OF CLAIMS CONT.

GRIEVANCE. PLAINTIFF ADAMENTLY EXPRESSED HIS CONCERN IN BEHALF OF THE LACK OF RESPONSIBILTY BY THE INSTITUTION'S MEDICAL DEPART- MENT'S IMPROPER JUDGEMENT TO NOT SEND PLAINTIFF BACK TO MILLCREEK HOSPITAL FOR FURTHER MEDICAL TREATMENT AND A FULL CAST. PLAINTIFF'S REVIEW OF HIS ALLEGATION(S) RAISED IN HIS GRIEV- ANCE WERE UNRESOLVED AND PLAINTIFF HAS NOT RECIEVED AN INITIAL REVIEW RESPONSE FROM MRS OVERTON.

7.  ON SEPTEMBER 30, 2001, PLAINTIFF AGAIN FILED A GRIEVANCE REGARDING TO THE LACK OF PROPER MEDICAL-TREATMENT FOR HIS BROKEN HAND AND HOW THE UNIT MANAGER OF PLAINTIFF'S HOUSING UNIT SHOULD HAVE, BUT FAILED TO INSTALL SAFETY PRECAUSIONS TO PREVENT FURTHER ACCIDENTS. PLAINTIFF'S GRIEVANCE WAS RETURNED BY GRIEVANCE COORDINATOR, MR. BILL BARR, AS BEING PREVIOUSLY ADDRESSED.

8.  ON OCTOBER 22, 2001, PLAINTIFF RECIEVED A RESPONSE FROM THE SECRETARY'S OFFICE OF INMATE GRIEVANCES AND APPEALS FROM MRS. TSHANNA C. KYLER DENYING PLAINTIFF'S GRIEVANCE HE APPEALED DATED SEPTEMBER 12, 2001, REASONING FOR SAID DENIAL WAS DUE TO THE FACILITY MANAGER'S RESPONSE NOT BEING INCLUDED.

9.  PLAINTIFF THEN SENT AN INMATE REQUEST SLIP, ON OCTOBER 22, 2001, TO THE MEDICAL DEPARTMENT/MRS. OVERTON/ EXPRESSING HIS CONCERNS ABOUT THE CONDITION OF HIS BROKEN HAND AND THE IMPROPER TREAT- MENT. PLAINTIFF STATED HE WAS EXPERIENCING PAIN AND LACK OF MOBILITY. TO DATE HE HAS NEVER RECIEVED A RESPONSE.

## RELIEF

A. ISSUE A DECLARATORY JUDGEMENT STATING THAT:

   1. THE DENIAL OF ADEQUATE MEDICAL TREATMENT TO THE PLAIN-TIFF BY DEFENDANTS OVERTON, MCVEY, AND ET. AL. DEFENDANTS DID INFACT VIOLATED PLAINTIFF'S RIGHTS UNDER THE EIGHTH & Fourteenth AMENDMENT TO THE UNITED STATES CONSTITUTION AND CONSTITUTED A DELIBERATE INDIFFERENCE UNDER THE STATE AND/OR FEDERAL LAW;

   2. DEFENDANTS BRENNAN WOLFE, HORN, AND BEARD'S FAILURES TO TAKE ACTION TO CURB THE DENIAL OF ADEQUATE MEDICAL TREATMENT TO PRISONERS VIOLATED PLAINTIFF'S RIGHTS UNDER THE EIGHTH & Fourteenth AMENDMENT TO THE UNITED STATES CONSTITUTION AND CONSTITUTED DELIBERATE INDIFFERENCE UNDER STATE AND/OR FEDERAL LAW;

   3. DEFENDANT HAMETZ AND FOGLE'S FAILURE TO PROVIDE REASONABLE SAFETY AND PROVIDE REASONABLE SAFE LIVING AND WORKING ENVIRONMENTS TO PRISONERS VIOLATED PLAINTIFF'S RIGHTS UNDER THE EIGHTH & Fourteenth AMENDMENT TO THE UNITED STATES CONSTITUTION AND CONSTITUTED A DELIBERATE INDIFFERENCE UNER STATE AND/OR FEDERAL LAW;

B. ISSUE AN INJUNCTION ORDERING DEFENDANTS WOLFE, FOGLE, OR THEIR AGENTS TO:

   1. IMMEDIATELY ARRANGE FOR RUBBER MATS TO BE PLACED ON ALL FLOORS IN ALL HOUSING UNIT SHOWER AREAS, DINING

3. a.

HALL AREAS, LOBBIES, AND ALL INMATE WORK AREAS THAT CON-
TAIN POTENTIAL FOR FUTURE POSSIBLE SAFETY HAZARDS;

2. CARRY OUT WITHOUT DELAY ANY AND ALL OTHER SAFETY
MEASURES AND PRECAUTIONS DEEMED NECESSARY TO GUARANTEE
INMATE'S SAFETY IN THE INSTITUTION.

C. ISSUE AN ORDER FOR AN INJUNCTION ORDERING DEFENDANT
BEARD TO:
    1. MANDATE THAT DEFENDANT BEARD CONSTRUCT AND IMPLI-
MENT A DEPARTMENT OF CORRECTION POLICY FOR WHICH TO
INSURE INMATE HEALTH AND SAFETY IN ALL ASPECTS OF INSTITUTIONAL
HOUSING OF INMATES THROUGHOUT THE DEPARTMENT OF CORRECT-
IONS.

D. AWARD COMPENSATION FOR COMPENSATORY DAMAGES IN THE
FOLLOWING AMOUNTS:
    1. $100,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS
HAMETZ AND FOGLE FOR PHYSICAL AND EMOTIONAL INJURIES
SUSTAINED BY FAILURE TO PROVIDE REASONABLE SAFETY AND
FAILURE TO PROVIDE REASONABLE SAFE LIVING AND WORKING
ENVIRONMENTS TO INMATES;

    2. $300,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS
OVERTON, MCVEY AND ET. AL. DEFENDANTS FOR PHYSICAL AND

EMOTIONAL INJURIES SUSTAINED FOR THE DENIAL OF ADEQUATE MEDICAL TREATMENT TO PLAINTIFF;

3. $300,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS HORN, BEARD, BRENNAN AND WOLFE FOR THE PHYSICAL AND EMOTIONAL INJURIES SUSTAINED IN CONNECTION WITH PLAINTIFF'S LACK OF REASONABLE SAFETY AND REASONABLE SAFE LIVING AND WORKING ENVIRONMENT AS WELL AS PLAINTIFF'S DENIAL OF ADEQUATE MEDICAL TREATMENT;

E. AWARD PUNITIVE DAMAGES IN THE FOLLOWING AMOUNT;

1. $300,000 EACH AGAINST DEFENDANTS HAMETZ AND FOGLE;

2. $300,000 EACH AGAINST DEFENDANTS OVERTON, McVEY, AND ET. AL. DEFENDANTS;

3. $300,000 EACH AGAINST DEFENDANTS HORN, BEARD, BRENNAN AND WOLFE.

F. GRANT ANY OTHER SUCH RELIEF AS IT MAY APPEAR THAT PLAINTIFF IS ENTITLED.

3.C.

3. ON SEPTEMBER 12, 2001, PETITIONER FILED A GRIEVANCE WITH THE INSTI-
TUTION'S GRIEVANCE COORDINATOR, MR. BILL BARR, WHO THEN FORWARDED
SAID GRIEVANCE TO GRIEVANCE OFFICER, MR. TIM HAMETZ, INST. UNIT MANAGER,
ON SEPTEMBER 13, 2001, FOR INVESTIGATION. MR. TIM HAMETZ AND PLAINTIFF
STATEMENT CONT. NEXT PAGES

**V.** Did the incident of which you complain occur in an institution
or place of custody in this District? If so, where?
STATE CORRECTIONAL INSTITUTION OF ALBION
10745 - ROUTE 18; ALBION, PENN., 16475-0002
and answer the following questions:

**A.** Is there a prisoner grievance procedure in this institution?
Yes (X)   No ( )

**B.** Did you present the facts relating to your complaint in the
state prisoner grievance procedure? Yes (X)   No ( )

**C.** If your answer is YES,

   1. What steps did you take? AFTER RECIEVING GRIEVANCE OFFICER'S INITIAL
REVIEW REPORT I THEN APPEALED TO THE SECRETARY'S OFFICE OF INMATE GRIEVANCES
AND APPEALS.

   2. What was the result? DENIED AS IMPROPERLY FILED.

**D.** If your answer is NO, explain why not: _____

**E.** If there is no prison grievance procedure in the institution,
did you complain to prison authorities?   Yes ( )   No ( )

**F.** If your answer is YES,

   1. What steps did you take? _____

   2. What was the result? _____

**VI.** Relief
State briefly exactly what you want the court to do for you.
Make no legal arguments. Cite no cases or statues.

   WHEREFORE, PLAINTIFF REQUESTS THAT THE COURT AND JURY GRANT THE
FOLLOWING RELIEF:
RELIEF CONT. NEXT PAGES.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND
CORRECT.

(Date)                        (Signature of Plaintiff)

16

# EXHIBIT  2

| Date/Time | Prob # | Discipline Abbreviation | Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 8/25/01 2005 | 4 | NSG. | S: "I fell in the shower". O: VSS. 122/80, 98°, 72/16. Inmate claims to have fallen in shower while holding towel and then fell on floor to ® hand in a first position. Noted ® hand edema, to outer aspect of hand. Tender to touch. ROM very limited. A: alter. in comfort. P: 33° Infirmary observation. Strong motrin CT 800 PRN x 24°. drsd ® hand Ø & PRN x 24°. coak up splint & ace wrap. To be seen by physician 8/26/01. JOHN PURVIS, RN  _J. Purvis RN_ |
| 8-26-01 0505 | 4 | ng | O: inmate slept throughout shift, arises very awake, VSS, Ø verbal complaints throughout shift. ® hand continues to be edematous in ltd ROM. A: alt. comfort. P: assess & treat as needed. — M. Kish _MARCIE KISH, RN II_ |
| 8-26-01 0730 | 4 | NSG | S: "I'm alright." O: ® hand c̄ splint & ACE bandage intact. Pt. declined medication or ice; VS) stated he wanted to rest; appetite good) resp. reg. & easy; ØSOB, Ø acute distress. no voiced complaints. A: Alteration in comfort. P: Continue to monitor in infirmary. _J. McDuffie_  JAMES McDUFF, RN |
| 8-26-0 1100 | 4 | M I | S. Inmate seen in infirmary. Pain swelling ® hand - fall in shower last nite - tenderness on hand - ? O. Tenderness; swelling ® 4-5 metacarpal - A. Poss fx metacarpal P. Will maintain splint & ace - Return in AM for Xray - _(signature)_  DR. DAVID BASHLINE, D.O. |

# PROGRESS NOTES

[X] Outpatient                                                                     [ ] Inpatient

| Date/Time | Prob # | Discipline Abbreviation | Remarks<br>Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 8·26·01<br>11³⁰ | 4 | NSG | S: "I'm fine."<br>O: Pt. released from infirmary per physician's order; no voiced complaints.<br>A: Alteration in comfort.<br>P: Follow c̄ x-ray of ® hand in Am; Pt. aware. Pt. released to general population.<br>J. McDuff,  JAMES McDUFF, RN |
| 8/27/01<br>0902 | 4 | CSPHS | Pt scheduled for onsite xray ~ ® hand ~ on Mon 8/27/01. Consult forwarded to L. Helgert, RT.  Rebecca Gould<br>- Clinical Specialist  RK Gould |
| 8/27/01<br>1005 | 4 | MD<br>I | S referred per nrs statt to √® hand ~<br>c/o slipped in the shower ~2 days ago<br>O: exists dorsal hand - tender to palpation<br>4th-5th metacarpal CMS intact<br>XRAY ® minimally displaced 4th metacarpal head Fx<br>A- ® hand Fx.<br>P: Put to MLH via private ER costs. Security to be notified by Admin. Asst. MLH orthro to be contacted by physician.<br>~ A ssn c̄ ... ? bed<br>D. Tele ...   [signature]<br>Dr. Mary Baker<br>Medical Director |

Progress Notes
Commonwealth of Pennsylvania
Department of Corrections
DC-472

Inmate Name: Green, Tyrone

Inmate Number: EP4593

DOB: 1/23/70

Institution: 009 SCI ALBION

②

| Date/Time | Prob # | Discipline Abbreviation | Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 8/27/01 1028 | 4 | CS PHS | Pt Scheduled offsite @ MCH - ER this day~ eval fx @ hand fx. Security notified — Rebecca Gould *RK Gould* Clinical Specialist |
| 8/27/01 1705 | 4/5 | RN | S: "I FEEL FINE" O: INMATE Returned FROM MCH hospital Fx RT hand Splint/ arm Sling intact — Neuro. Vasc. check RT hand well. No C/o Pain/discomfort n. Retin comfort. P. Release To new Population chart referred To Dr. Bailes for for Rx - Follow up care TOM HICKEY, RN   TOM Hickey RN *T Hickey* |
| 9/4/01 1105 | 5 | CS PHS | Pt scheduled visit c Dr. T. Ferretti on Fri. 9/14/01 during the ortho clinic. Unable to schedule pt offsite due to scheduling & Security Concerns. Spoke c Dr. Ferretti's staff re: this issue. ~ S/p fx @ hand Rebecca Gould *RK Gould* Clinical Specialist |
| 9/14/01 1230 | 5 | CS PHS | Pt "No Show" for Ortho clinic. Per Dr. Ferretti, pt is to be scheduled offsite @ MCH Ortho clinic for rev w/in 2 wks — Rebecca Gould *RK Gould* Clinical Specialist |
| 9.17.01 1439 | 5 | CS PHS | Pt scheduled offsite @ MCH ortho clinic c Dr. T. Ferretti on Wed 9/26/01 to rev @ hand. Rebecca Gould *RK Gould* Clinical Specialist |

③

# PROGRESS NOTES

[ ] Outpatient                                                                [ ] Inpatient

| Date/ Time | Prob # | Discipline Abbreviation | Remarks<br>Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 9-20-01 | | PAC | S: ∅ |
| 1610 | #9 | | O: wo lvm |
| | | | A: fracture 4th/5th metacarpal ® hand |
| | | | P: chart reviewed ī Dr Ferretti, in note was |
| | | | a no show for on site clinic (9/14) discussed |
| | | | @ length will take xray on site, then |
| | | | transport to MCH for review due to security |
| | | | issue of non emergent outside trips will |
| | | | follow process per Dr Ferritty direction |
| | | | ⎯⎯⎯⎯⎯ ⎯ PAC |
| 9/21/01 | | PAC | P: N/S PA/ Sick line ⟶ Fri 0930 hr apt ⎯⎯ PAC |
| 1005 | | I | |
| 9/21/01 | | PAC | S: Wants cast placed on ® hand |
| 1010 | (19) | I | c/o excessive mvt in splint. |
| | | | admits to taking splint off to clean |
| | | | hand on a regular basis. |
| | | | O: Splint intact - ulnar gutter plaster splint. |
| | | | CMS intact: ® capillary refill. sensation |
| | | | intact. Ø STS. |
| | | | A: S/P metacarpal fx 4 & 5 ® hand |
| | | | P: X-ray done - to be sent to Dr Ferretti's office for |
| | | | review, will N/S for TX plan in near future |
| | | | cont splint until then. provider will eval today ⎯⎯ PAC |

**Progress Notes**
**Commonwealth of Pennsylvania**
**Department of Corrections**
**DC-472**

Inmate Name: Green Tyrone

Inmate Number: EP4593

DOB: 1-23-70

Institution: Albion

④

| Date/Time | Prob # | Case Discipline Abbreviation | Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 10/1/01 1300 | 19 | CS PHS | Pt's offsite appt on 9/24/01 c̄ Dr. T. Feretti has been t/s for the 10/13/01 onsite clinic. X-rays reviewed by Dr. Feretti on 9/21/01, healing well — no medical necessity to send pt. offsite. Rebecca Gould Clinical Specialist R. Gould |
| 10/6/01 0950 | 19 | CS PHS | S: Ortho. clinic O: See DCU41 A: S/p R 4th & 5th mc fx. P: X-ray OOS (done today) RTC PRN. Pt. vrbal understanding Rebecca Gould Clinical Specialist R. Gould |
| 10/25/01 1335 | (9) (14) (5) | P/A P | S: Requesty Tolnaftate & hand Rash also c/o R ear clogged. Request gtts for it also states that did not repeatedly take splint off hand only x1 to wash hand. wants PT for hand. O: HEENT: R came off by self (ACetone loose). Cerumenosis AU Tympanium AS. Skin scaly noted Palm of R hand. Musc bld almost from R wrist. grp str str 5. A: Tinea Manum, Cerumenosis AU, S/P Fx structure dysf R hand P: Lcy Debrox otc 5cc 10 gtts AU BID x 5 days Flruw ear irrig. Tolnaftate 1% ont BID x 30D ⊕ RF. Motrin 600mg PO Q8h PRN x 30D ⊕ RF. Instructed & demonstrated home PT exercises wnp PO Q8h prn to home PT. RT as scheduled & prn. pt verbal understanding T Mowry, PA |
| 10-31-01 | | P/A | no show PA line 1340 appt no medication to reschedule T Mowry |
| | | | TAMMY MOWRY, PA |

⑤

# PROGRESS NOTES

[X] Outpatient                                                    [ ] Inpatient

| Date/ Time | Prob # | Discipline Abbreviation | Remarks Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 11-28-01 | | PAC | S west AIMS clinic |
| 1505 | C | | O per DC-470 |
| | | | A depression |
| | | | P Rt as scheduled                    TAMMY MOWRY, PA |
| 3562 | | PAC | S Hemorrhoids noticed 2 weeks ago during |
| 1600 | #6 | TI | bleeding they more than anything |
| | | | O rectal small unthrombosed mass noted |
| | | | @ 11 o'clock hemocult ⊖ ; ⊖ internal lesion |
| | | | A hemorrhoids |
| | | | P Dibucane 1% apply daily × 10 days |
| | | | ↑ fluids especially H₂O RT p.m. med |
| | | | + mustard                              TAMMY MOWRY, PA |
| 3/15/02 | | PAC | S – sore spot |
| 1345 | ① | | O. sm bump/red |
| | | | A. appropriate lgt |
| | | | P. labs ordered - testing explained RTC prn |
| | | | Pt understanding |
| 3/25/02 | #1 | 1030 KS | O. Patient received health education with regard to TB prevention and treatment verbalizes understanding.   Pt. received Hepatitis C educational pamphlet and health education regarding access and screening process. Pt. verbalized understanding. |
| | | | HCV @ 4/01 ~ B. Monroe   BARBARA MONROE, F |

Progress Notes
Commonwealth of Pennsylvania
Department of Corrections
DC-472

Inmate Name: Green Tyrone

Inmate Number: EP 4593

DOB: 1 – 23 – 70

Institution: SCI Albion

⑥

| Date/ Time | Prob # | Discipline Abbreviation | Remarks Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 4/4/02 | | 1230 WSL | O: Telebinocular/Audiogram done per DOC policy. Passed _____ ; Failed No Show; Will reschedule x next clinic — BMonroe BARBARA MONROE, RN |
| 4/23/02 130 0 | 8 | NSG | Telebinocular/Audiogram done per DOC policy. Passed X ; Failed refered to optometry JENNIFER CURRAN, LPN JCurran |
| 4/24/02 1010 | (8) | Adm/PHS | Pt sch'd onsite c̄ Dr Berson during the 5/02 OPT clinic ~ refraction √ DT Deborah Trimble Administrative Asst. D Trimble |
| 5/17/02 1524 | 8 | RT/OC PHS | S: Opt clinic O: See DC441/451 A: Hyperopia P: RX for glasses ordered Pt voiced understanding Wear as needed LINDA HELGERT, R.T. LHelgert RT |
| 6/5/02 1341 | 8 | RT/OC PHS | S: Eye clinic, new glasses O: See DC441/451 A: Hyperopia P: GLASSES RECEIVED BY INMATE Pt expressed satisfaction Informed pt of proper care of glasses, procedure for repairs + costs involved are his responsibility Pt voiced understanding LINDA HELGERT, R.T. LHelgert RT |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

⑦

# PROGRESS NOTES

[ ] Outpatient                                           [ ] Inpatient

| Date/Time | Prob # | Discipline Abbreviation | Remarks — Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 9-27-02 0920 | #9 | PHC tt | S requing refill Tolnaftate states really wks just came back |
| | | | ⊙ hand skin peeling - |
| | | | A-tinea man |
| | | | P. Tolnaftate cream apply BID x 30day (qua) RTPRN — Mowry |
| | | | TAMMY MOWRY, PA |
| 12.7.02 1500 | RHU | NSG | O: Placed in RHU No medical contraindicaton for RHU placement — D.D. Daniel Przybrowski RN II |
| 12/20/02 1235 | (19) | Poc | S C/O ⊙ hand pain Hx Fx in past ⊙ Act trama "Aching" |
| 12/20 | | | O: FROM dig tt wrist. pt pnts to 4th + 5th metacarpals. X-ray 10/12/01 @ fxs 4th + 5th metacarpals. |
| | | | A post tramatic DTD ⊙ hand |
| | | | P: llc: Motrin 800mg PO TID PC x 14days. [signature] pt views understanding [signature] |
| 1/22/03 1055 | Poc (10) (24) | Poc | S C/O ⊙ hand PAIN. c/o GI upset ē motrin "did it work" also c/o jock itch on penis + scrot @ itchy "raw" @ help ē Tolnaftate. wants Cardiac Diet 2° GERD "Lofat". |
| | | | O: X-ray 10/12/01 @ healed fx base 4th + 5th metacarpals |

**Progress Notes**
**Commonwealth of Pennsylvania**
**Department of Corrections**
**DC-472**

Inmate Name: Green, Tyrone

Inmate Number: EP4593

DOB: 1-23-70

Facility: SCI Albion



| Date/ Time | Prob # | Discipline Abbreviation | Remark: Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 122 | | RAC | Genitalia - P macerate / erytha scrot |
| 1100 | (24) | | Abd NT / MD PB Rxd - non |
| | 19 | | A · bttf tinea NSV @ hand, GERD, NSAID gastritis, Thea Cmp. |
| | 25 | | P · N v/o 3h work if T <32°. Lks: Micatin 2% cr |
| | | | BID x300 PRF. Cond un Det x1(30) Ays. advise |
| | | | umB R Dk lt Rapt Rers: Carafate 1gm PO QID c̄ |
| | | | metMux 30) x2PF. Motrin 200mg PO QID PC &c̄ |
| | | | Carafate x30 K2PF. RTC ptroiwder |
| | | | |
| 2/20/13 | (12) | Ar | S lo diarrhea hx-frp. stood soft tha nr |
| | (B)(C) | | close x 2 wks ↑ stool latly → so Stm tub |
| | | | stress exacerbates BMS TID peaty |
| | | | O Abd NT/no, mm pt INTACT |
| | | | A suspect IBS w/o Depresson, BAD. |
| | | | P-lks: kaopectate 30cc PO Q10 Px X 14 days. RTC P2W |
| | | | advise PL ≤ P. ptroiwdersta |
| 3/26/13 | 15 | 1300 NS | O · Pt received Hepatitis C educational pamphlet and health education regarding access and screening process. Pt. verbalized understanding. HCV @ 4/01 — BARBARA MONROE, RN |
| 4-28-08 | | PR | S requests u fill in Motrin and Carafate Jr |
| 1430 | #9 | | R head pain |
| | | | O B head ⊝ gross deformities noted Rom appears WNL neuro/vascular intact |
| | | | A S/p B head fx |
| | | | P Motrin 600mg po QID pm x 30 day ORF Carafate 1gm po QID x 30 day ORF discuss OTC's Rpm and as needed, med understandy TAMMY MOWRY, PA |