**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TYRONE GREEN, } | |
| } | |
| Plaintiff, } | |
| } | No. 03-149 Erie |
| vs. } | Judge McLaughlin |
| } | Magistrate Judge Baxter |
| MARTIN HORN, et al., } | |
| } | **Electronically Filed** |
| Defendants. } | |

**BRIEF IN SUPPORT OF CORRECTIONS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. STATEMENT OF THE CASE**

Plaintiff, Tyrone Green, EP-4593 ("Green"), is a *pro se* prisoner currently in the custody of the Pennsylvania Department of Corrections ("DOC") in the State Correctional Institution at Smithfield. Green brings the instant action pursuant to 42 U.S.C. § 1983 against several individuals employed by the DOC at his former institution, the State Correctional Institution at Albion ("SCI-Albion"): Edward Brennan; William Wolfe; Maxine Overton and William Barr (collectively "the Corrections Defendants").[1] See Amended Complaint (Doc. # 75).[2] Green alleges that, in violation of his Eighth Amendment rights against cruel and unusual punishment, the Corrections Defendants denied him adequate medical care for a hand injury he suffered in August of 2001 while incarcerated at SCI-Albion. See (Doc. # 75), generally. Green also contends that this

---

[1] Green also brings the instant action against two individuals –Dr. Baker and P.A. Telega– who are independently contracted agents of the DOC, rather than employees. Consequently, These defendants are not represented by the Office of Attorney General, and are not parties to this motion.

[2] A copy of Green's complaint as amended is included in the attachment to the Corrections' Defendants' Motion for Summary Judgment as Exhibit 1. See Overton Declaration (Attachment A).

asserted denial of adequate medical care by the Corrections Defendants violated a prohibition against "deliberate indifference to a serious medical need under the law of Pennsylvania." Id., at p. 5, ¶ 12.

A brief discussion of the procedural history in this case is necessary at this juncture. Green filed his original complaint on May 22, 2003, naming Martin R. Horn, Jeffrey A. Beard, Catherine McVey, Edward Brennan, William Wolfe, Maxine Overton, Rick Rogle, Tim Hametz, William Barr and Dr. Baker as defendants. See (Doc. # 1). The Corrections Defendants (who, at that time, also included Horn, Beard, McVey and Rogle) filed a Motion to Dismiss, with supporting brief, on October 31, 2003. See (Docs. # 27-28). By Order of Court dated October 27, 2004, the Corrections Defendants' Motion to Dismiss was denied, but defendants Horn, Beard, McVey, Hametz, and Rogle were dismissed, *sua sponte*, pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c). See Report and Recommendation (Doc. # 37) and Order of Court (adopting Report and Recommendation)(Doc. # 41).

Green sought leave to amend his complaint, see (Doc. # 39), was granted permission to do so by Order of Court, see (Doc. # 49), and amended his complaint on November 3, 2004, see (Doc. # 50). In response thereto, the Corrections Defendants filed a Motion to Dismiss Amended Complaint and/or Motion for Summary Judgment, with supporting brief, on December 8, 2004. See (Docs. # 51-52). Without leave of Court, Green then attempted to file a second amended complaint on January 21, 2005, see (Doc. # 57), in response to which the Corrections Defendants renewed their previously filed dispositive motion. See (Doc. # 58).

In a Report and Recommendation issued on July 26, 2005, Magistrate Judge Susan Paradise Baxter granted the Corrections Defendants' Motion to Dismiss Amended Complaint and/or Motion for Summary Judgment. See (Doc. # 66). However, on September 7, 2005, Judge Sean J. McLaughlin declined to adopt the Report and Recommendation, denied the Corrections Defendants' Motion to Dismiss Amended Complaint and/or Motion for Summary Judgment (Doc. # 51), citing the illegibility of Green's medical records and the Corrections Defendants' failure to attach an interpreting affidavit to their motion. See (Doc. # 70). The matter was remanded to Magistrate Judge Baxter for further proceedings. Id.

By Order of Court dated September 27, 2005, Green was permitted to seek leave to further amend his complaint, see (Doc. # 73); however, Green instead filed a Second Amended Complaint on October 11, 2005. See (Doc. # 75). Green's Second Amended Complaint affected a minor supplementation of his previous complaints, by simply revising his damages demand and specifically naming Telega as a defendant, who had previously been ambiguously-identified. See (Doc. # 75). Green's allegations against the Corrections Defendants remained unchanged from the previous formulations of his complaint. Id. The Corrections Defendants answered Green's Second Amended Complaint on October 14, 2005, see (Doc. # 76), and were Ordered to file dispositive motions by December 9, 2005. See (Doc. 79). The instant motion and supporting brief are filed in response thereto.

## II. STANDARD OF REVIEW

In ruling on a motion for summary judgment, a threshold inquiry is conducted on the need for a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Federal Rules of Civil Procedure 56(c). See also, Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986). The moving party bears an initial burden of showing the absence of any genuine issues of fact; the non-moving party must set forth specific facts showing that there is a genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirements is that there is no genuine issue of material fact. See Anderson, 477 U.S. at 248. Rule 56(e) does not allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicion. See Fireman's Insurance Company of Newark v. DeFresne, 676 F.2d 965, 969 (3d Cir. 1982). There is not issue for trial unless evidence in the record would permit a jury to return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, the court construes all facts and inferences in the light most favorable to the non-moving party. See Pollack v. AT&T, 794 F.2d 860, 864 (3d Cir. 1986).

To apply the summary judgment test, the elements of a plaintiff's prima facie case under the substantive law are considered. See Anderson, 477 U.S. at 248. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation, 477 U.S. at 322.

### III. ARGUMENT

**A.    The Corrections Defendants are entitled to summary judgment because Plaintiff has failed to state an Eighth Amendment claim upon which relief can be granted.**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment clause depends upon the claim at issue." Hudson v. McMillan, 503 U.S. 1, 8 (1992). To show that inadequate medical care has risen to the level of a Constitutional deprivation, Green must demonstrate that he had a "serious medical need" to which the defendants were "deliberately indifferent." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Third Circuit has expressly adopted this standard: "[t]o demonstrate a prima facie case of cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted with 'deliberate indifference to his or her serious medical needs.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (citing Estelle, 429 U.S. at 104). See Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

Moreover, the Supreme Court of the United States has held that mere negligence does not give rise to a constitutional violation. See Daniels v. Williams, 474 U.S. 327, 330-331 (1986). The Third Circuit has agreed, stating that "it is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

In the instant case, Green contends that on August 25, 2001, he fell while exiting the showers at SCI-Albion, and injured his right hand as a result. See (Doc. # 75), at p. 4, ¶¶ 1-2. Green admits that he was transported to Millcreek Community Hospital ("MCH") the day after his injury, and that he received treatment there. See (Doc. # 75), at p. 4, ¶ 3. Specifically, Green states that the physicians at MCH placed his injured hand

5

in a "temporary cast" due to swelling, and ordered that he be returned to MCH for a "permanent cast" in two days. See (Doc. # 75), at p. 4, ¶¶ 3-4. Green contends that he was never returned to MCH, and thus never received a permanent cast; as a result, he asserts, his injured right hand "was never stabilized," causing "severe pain" and the continual need to take medication. See (Doc. # 75), at pp. 4-5, ¶¶ 6-12.

In viewing these allegations in the light most favorable to Green, as is required for the purposes of this motion, it appears as though Green has met the first prong of the Eighth Amendment inquiry, inasmuch as a broken hand can certainly be characterized as a "serious medical need." That being said, Green has nonetheless failed to state a cognizable Eighth Amendment claim for the denial of medical care because he has not established that the Corrections Defendants possessed the requisite *scienter* of deliberate indifference. See, e.g., Jones v. Falor, 135 Fed.Appx. 554 (3d Cir. 2005)(inmate's eighth amendment denial of medical care case against prison officials dismissed as frivolous pursuant to 28 U.S.C. § 1915 because inmate was treated by medical professionals and offered no proof that prison officials were deliberately indifferent).

In Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993), the Third Circuit held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Id., at 68. The Eastern District of Pennsylvania, in following Durmer, has stated that "[p]rison administrators and the nursing staff of the prison infirmary cannot be found deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the

6

recommendations of the treating physician." See Fillebrown v. Zettlemoyer, 1996 U.S.Dist.LEXIS 11495, *10 (E.D.Pa. 1996)(citing Durmer, supra).

More recently, in Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), the Third Circuit reiterated its holding in Durmer, stating that:

> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ] will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference.

Spruill, 372 F.3d at 236. See also Hussman v. Knaur, 2005 U.S.Dist.LEXIS 2779 (E.D.Pa. Feb. 22, 2005); King v. Leftridge-Byrd, 2005 U.S.Dist.LEXIS 645 (E.D.Pa. Jan. 14, 2005).

Moreover, "[i]n order to charge a non-medical prison official with the Eighth Amendment *scienter* requirement of deliberate indifference, a plaintiff 'bears the burden of proving... facts supporting the defendants' mental state.'" Huskins v. Beard, 2004 U.S.Dist.LEXIS 20083, *21 (E.D.Pa. 2004)(citing Spruill, 372 F.3d at 236)); Singletary v. Pennsylvania Department of Corrections, 266 F.3d 186, 192 n. 2 (3d Cir. 2001).

In the instant case, all of the Corrections Defendants are non-medical prison officials. See (Doc. # 75). Specifically, Corrections Defendants Brennan and Wolfe are named, respectively, as the former and current Superintendent at SCI-Albion, Corrections Defendant Barr is named in his capacity as the Assistant Superintendent at SCI-Albion, and Corrections Defendant Overton is named in her capacity as the Corrections Health Care Administrator.[3] Id. Hence, inasmuch as Green received an abundance of care from

---

[3] Despite what, at first glance, the title may indicate, Corrections Health Care Administrators, like Corrections Defendant Overton, are treated as non-medical prison officials for the purposes of Section 1983 denial of medical care claims. See Hull v.

7

medical professionals both within and outside of the DOC, as discussed more thoroughly below, these Corrections Defendants cannot be held liable for a violation of Green's Eight Amendment rights.

Indeed, a careful review of Green's medical and institutional records reveals a significant and substantial history of continual care and treatment for Green's hand injury. See Overton Declaration (appended to Corrections' Defendants' Motion for Summary Judgment, at Attachment A). Initially, on August 25, 2001, Green reported to officials at SCI-Albion that he had fallen while getting out of the shower and injured his right hand. See Overton Declaration, at ¶ 3. Immediately upon reporting this injury, Green was seen in the infirmary at SCI-Albion by Nurse John Purvis. Overton Declaration, at ¶ 6. Nurse Purvis examined Green's right hand, gave him a cockup splint and ace bandage to immobilize the area, prescribed 800 mg of Motrin and advised Green to apply ice to the injury. Id. Green's medical records reflect that the Motrin, ace bandage, splint and ice prescribed by Nurse Purvis were given to Green as directed. Overton Declaration, at ¶¶ 7, 9.

The next morning, August 26, 2001, Green's hand was examined at SCI-Albion by Nurse James McDuff. Overton Declaration, at ¶ 8. Nurse McDuff noted that Green's splint and ace bandage were intact, and that Green refused additional medication and ice. Id. Shortly after Nurse McDuff's examination, Green was examined by Dr. David Bashline. Id. Dr. Bashline directed Green to continue use of the splint, ace bandage and ice, and ordered that an x-ray of Green's hand be taken at SCI-Albion the next day. Id.

---

Dotter, 1997 WL 327551, *4 (E.D.Pa. 1997); Freed v. Horn, 1995 WL 710529, *3-4 (E.D.Pa. 1995); McAleese v. Owens, 770 F.Supp. 255, 262 (M.D.Pa. 1991).

8

Green's hand was x-rayed as directed the next morning, August 27, 2001, and the x-ray was sent to Millcreek Community Hospital (MCH) for evaluation. Overton Declaration, at ¶ 10. The x-ray reports and MCH records show that Green was diagnosed with a displaced right ring finger and an avulsion, or bone splinter, on his right pinky finger. Id. In light of these results, Green was transported from SCI-Albion to MCH for further treatment. Overton Declaration, at ¶ 11. Green was examined by medical staff at MCH, given a gutter splint and sling for his hand and, once again, advised to apply ice to the injury. Overton Declaration, at ¶ 12. A follow-up appointment for Green at MCH was scheduled for September 5, 2001. Id. Upon his return to SCI-Albion from MCH, Green was given ice for his hand, Tylenol and Ibuprofen. Overton Declaration, at ¶ 13. The gutter splint and sling given to Green at MCH were also confirmed intact upon his return to the institution. Id.

On September 4, 2001, Dr. T. Feretti, a physician that worked both at MCH and SCI-Albion, was consulted regarding Green's previously scheduled follow-up appointment. Overton Declaration, at ¶ 14. It was determined that, in light of scheduling and security concerns, Green would be seen by Dr. Feretti at the SCI-Albion orthopedic clinic on September 14, 2001, rather than being transported back to MCH. Id. However, Green was a "no-show" for his September 14, 2001 appointment with Dr. Feretti at the SCI-Albion orthopedic clinic. Overton Declaration, at ¶ 15. In light of Green's absence from this appointment, Dr. Feretti recommended that Green be scheduled for a follow-up appointment with him at MCH in two weeks. Id. This MCH follow-up appointment was approved by SCI-medical staff and scheduled consistent with Dr. Feretti's recommendation, for September 26, 2001. Id.

On September 20, 2001, another x-ray of Green's right hand was ordered by SCI-Albion medical staff. Overton Declaration, at ¶ 16. On the morning of September 21, 23001, Green was examined by SCI-Albion Physician's Assistant Telega, who noted that Green "wants a cast," but "admits to taking [his] splint off to clean hand on a regular basis." Overton Declaration, at ¶ 17. P.A. Telega also noted that, despite these complaints, Green's gutter splint was still intact. Id.

On the afternoon of September 21, 2001, Green's right hand was x-rayed as directed, with the gutter splint on, and sent to Dr. Feretti for review. Overton Declaration, at ¶ 18. The September 21, 2001 x-ray showed that, as set in the gutter splint, Green's injured hand was aligned correctly for healing. Id. Upon review of the September 21, 2001 x-ray, Dr. Feretti rescheduled Green's follow-up appointment from September 26th at MCH to October 12, 2001, at the SCI-Albion orthopedic clinic, noting that Green's hand was healing well and there was "no medical necessity to send [him] offsite." Overton Declaration, at ¶ 19.

On October 12, 2001, Green was seen at the SCI-Albion orthopedic clinic and his injured right hand was x-rayed again, this time, without the splint. Overton Declaration, at ¶ 20. Once again, the x-ray showed that Green's hand was healing. Overton Declaration, at ¶ 21. Green was examined by P.A. Telega on October 25, 2001, at which time Green requested physical therapy for his hand. Overton Declaration, at ¶ 22. P.A. Telega showed Green how to do physical therapy exercises in his cell and prescribed 600 mg of Motrin. Id.

The Progress Notes and Physician's Orders in Green's SCI-Albion medical records file show that he was subsequently seen by numerous SCI-Albion and outside

medical professionals after this October 25, 2001 examination, and did not voice any complaints about his right hand for over a year. Overton Declaration, at ¶ 23. Specifically, Green did not complaint of pain in his right hand again until December 20, 2002, during an unrelated examination by P.A. Telega. Overton Declaration, at ¶ 24. In response to these renewed complaints, Green was prescribed 800 mg of Motrin for fourteen days. Id. During his next visit with P.A. Telega on January 22, 2003, Green complained that the 800 mg of Motrin had upset his stomach; consequently, P.A. Telega authorized Green to have a 300 mg of Motrin prescription refilled two times and to take the larger 800 mg doses only when needed. Overton Declaration, at ¶ 25.

Once again, Green met with SCI-Albion medical professions numerous times for several months without voicing any complaints or concerns about his right hand, next requesting a refill of his Motrin prescription on April 28, 2003, which was granted. Overton Declaration, at ¶ 26. After this lone request for pain medication, Green was again silent with regard to his hand for nearly a year. Overton Declaration, at ¶ 27. Upon transfer to a new institution, Green renewed complaints of pain, and on March 18, 2004, another x-ray of Green's right hand was ordered. Overton Declaration, at ¶ 28. This x-ray was done on March 19, 2001, and reviewed by Dr. Peter G. Gregory on March 22, 2004. Id. This x-ray revealed that the injury to Green's right hand was healed and that there were "no new or acute fractures" or "significant arthritic changes." Id.

In sum, these medical records reveal that Green received an abundance of care from medical professionals and staff at two state correctional institutions and a local community hospital and that he underwent several x-rays and received pain medication virtually on request. More importantly, Green has offered nothing to suggest that any of

11

the care he received from outside medical professionals amounted to mistreatment, or that the Corrections Defendants had any reason to believe that Green was not receiving appropriate treatment and care for his injury. Indeed, the main thrust of Green's complaint against the Corrections Defendants is that he was supposed to be returned to MCH for a permanent cast. However, nowhere in his medical records from SCI-Albion or MCH is it indicated that he was to be returned to MCH for a "permanent cast." Although these records disclose that Green was at one point scheduled for a follow-up appointment at MCH, they also show that the appointment was rescheduled to SCI-Albion, but with the same physician. And, notwithstanding that Green failed to show for this and other appointments, this physician followed his progress and determined that –as corroborated by several subsequent x-rays– Green's hand was healing appropriately and that no other course of treatment and care was required or recommended. As such, Green has failed to establish that the Corrections Defendants were deliberately indifferent and, correspondingly, has failed to state a cognizable Eighth Amendment claim upon which relief can be granted. See Spruill, 372 F.3d at 236. Summary judgment should therefore be entered in favor of the Corrections Defendants.

### B. The Corrections Defendants are entitled to summary judgment on Plaintiff's state law claims on the basis of Eleventh Amendment and/or sovereign immunity.

In addition to the Eighth Amendment claim discussed in section A. above, Green contends that the Corrections Defendants' actions amounted to "deliberate indifference to a serious medical need under the law of Pennsylvania." (Doc. # 75), at p. 5, ¶ 12. The Corrections Defendants cannot be held liable pursuant to this state law claim inasmuch as

they are protected against liability on these claims by Eleventh Amendment and/or sovereign immunity.

The Eleventh Amendment to the United States Constitution precludes suits against a state and its alter-ego state agencies in Federal Court, regardless of the type of relief sought. See Hans v. Louisiana, 134 U.S. 1 (1890); Kentucky v. Graham, 473 U.S. 159 (1985).[4] There can be no question that the DOC is an alter-ego agency of the state, entitled to Eleventh Amendment immunity. See Dennison v. Pennsylvania Department of Corrections, 268 F.Supp.2d 387, 396 (M.D.Pa. 2003); Hunter v. Commonwealth of Pennsylvania Department of Corrections, 42 F.Supp.2d 542, 547 (E.D.Pa. 1999).

Next, the Eleventh Amendment immunizes state officials acting within their official capacities from monetary damages. Id. To hold a state official liable for damages in a Section 1983 case, a plaintiff must allege the personal involvement of the state actor in the constitutional deprivation, and the actor can only be sued in his individual capacity. See Hafer v. Melo, 502 U.S. 21 (1991); Rode v. Dellarciprite, 845 F.2d 1195 (3d Cir. 1998). This being a suit for damages, see (Doc. # 75), at p. 2, as opposed to a suit for injunctive relief, see Ex Parte Young, 209 U.S. 123 (1908), the Corrections Defendants, ostensibly sued in their official capacities, are also entitled to

---

[4] A State's Eleventh Amendment immunity can be lost in only two ways. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984). First, by Congressional abrogation; however, Congress did not abrogate the States' Eleventh Amendment sovereign immunity for suits in federal court when it enacted Section 1983. See Quern v. Jordan, 440 U.S. 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Second, by waiver and consent; however, there is no question that the Commonwealth of Pennsylvania has preserved its Eleventh Amendment immunity, and has not consented to suit in federal court. See Pa. Const., Art. I, § 11; 1 Pa. C.S. § 2310; 42 Pa. C.S. § 8521(b). See also Laskaris v. Thornburg, 661 F.2d 23, 25 (3d Cir. 1981).

Eleventh Amendment immunity because the suit is, in reality, against the state itself. See Hafer, supra; Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984).

To the extent that the Corrections Defendants are sued in their individual capacities, they are also immune from Green's state law allegations based on the doctrine of sovereign immunity under Pennsylvania law. See 42 Pa. C.S. §§ 8521-8522; 1 Pa. C.S. § 2310. The exceptions to sovereign immunity set forth in 42 Pa. C.S. § 8522(b) must be strictly construed, and in any event, do not apply in the instant case. See Crockett v. Edinboro Univ., 811 A.2d 1094, 1096 (Pa. Cmwlth. 2002). Section 8522(b) provides an exhaustive lists of exceptions to the sovereign immunity covering state actors in Pennsylvania: (1) vehicle liability; (2) medical/professional liability[5]; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales; (8) national guard activities; (9) toxoids and vaccines. See 42 Pa. C.S. 8522(b). None of these exceptions apply here. Hence, Green's state law claims against the Corrections Defendants should be dismissed on the bases of Eleventh Amendment and/or sovereign immunity.

### C. The Corrections Defendants are entitled to summary judgment because Plaintiff has failed to allege personal involvement against them.

A defendant must be shown by the allegations contained in the Complaint to have been personally involved or have actual knowledge of an acquiesced in the commission of the wrong. See Rizzo v. Goode, 423 U.S. 362 (1976). Liability can only be imposed

---

[5] To the extent that Green attempts to assert medical/professional liability vis-à-vis his state law claims, this exception would apply only to the defendants that are medical professionals –none of whom are Corrections Defendants.

14

if that official played an "affirmative part" in the complained of misconduct. See Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). It has long been held a "defendant in a civil rights action must have personal involvement in the alleged wrongdoing." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit recently reaffirmed this requirement in Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Moreover, the supervisory official's misconduct cannot be merely a failure to act. See Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 336 (3d Cir. 1981), cert. denied, 458 U.S. 1121 (1982). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 111 S.Ct. 2827 (1991). The supervisor must be personally involved in the alleged misconduct. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989). Section 1983 liability cannot be predicated solely on *respondeat superior*. See Rizzo v. Good, 423 U.S. 362 (1972).

The Third Circuit's recent decision in Evancho v. Fisher, supra, makes clear that personal involvement remains a prerequisite for Section 1983 supervisory liability. The Evancho Court held that the mere hypothesis that an official is personally involved in

15

complained of conduct "simply because of his [supervisory] position" is an insufficient basis for finding Section 1983 liability. See Evancho, 423 F.3d at 353-355 (allegations of personal liability on the part of the state Attorney General were insufficient where plaintiff did not specifically allege that the Attorney General had ordered the acts of his "underlings," or had acquiesced to those acts with contemporaneous knowledge of them). Correspondingly, in another recent decision adjudicating allegations of similar "supervisory liability," our Eastern District counterpart held that liability is "unjustified" "[w]here the only role of supervisory prison officials in the alleged misconduct of their subordinates is the denial of plaintiff's administrative grievances and a concomitant failure to act to remedy the alleged misconduct." Abuhouran v. Acker, 2005 U.S.Dist.LEXIS 12864, *19 (E.D.Pa. June 29, 2005)(citing Shehee v. Luttrell, 199 F.3d 295 (6th Cir. 1999).

In the instant case, Green has failed to allege that any of the Corrections Defendants were actively involved in the medical care he received. See (Doc. #75). To the extent that Green's allegations against the Corrections Defendants are otherwise predicated on the grievances or inmate requests to staff sent to them by Green, this allegation in an insufficient basis for Section 1983 liability.

It has long been established that "prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa. 1997), aff'd 142 F.3d 430 (3d Cir. 1998)(Table)(citing McGuire v. Foor, Civil Action No. 94-6884, 1996 WL 131130 at *1 (E.D.Pa. 1996), aff'd, 101 F.3d 691 (3d Cir. 1996). A prisoner does not have a right to file a grievance. See Wilson, 971 F.Supp. at 947 (citing Flick v. Alba,

932 F.2d 728, 729 (8th Cir. 1991)). Hence, as it has been found by the Third Circuit, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement, see Rode v. Dellarciprete, 845 F.2d at 1208, nor is concurrence in an administrative appeal process, see Watkins v. Horn, 1997 WL 566080, *4 (E.D.Pa. 1997), nor even affirmation of a prison review committee decision, see Garfield v. Davis, 566 F.Supp. 1069, 1074 (E.D.Pa. 1983). As such, Green has failed to allege personal involvement against the Corrections Defendants and summary judgment should therefore be entered on their behalf.

### D. In the alternative, the Corrections Defendants are entitled to qualified immunity.

The doctrine of qualified immunity protects government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[6] This standard was very recently clarified by the Third Circuit in Gilles v. Davis, in which they held that "[q]ualified immunity encompasses mistaken judgments that are not plainly incompetent." See Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005)(citing Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

Moreover, in Anderson v. Creighton, 483 U.S. 635 (1987), the Court held that whether a government official could be held personally liable for conduct that allegedly violated a constitutional or statutory right depended on the objective legal reasonableness of the action. Id., at 639. Under this standard, government officials are shielded from

---

[6] An order rejecting a request for summary judgment based on qualified immunity is deemed a final judgment and subject to immediate appeal. See Behrens v. Pelletier, 516 U.S. 299, 307 (1996); Donahue v. Gavin, 280 F.3d 371, 381 n. 17 (3d Cir. 2002).

17

civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Id. In Brown v. Grabowski, 922 F.3d 1097 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), the Third Circuit interpreted Anderson to require analysis not only for the clear establishment of the right that an official is alleged to have violated, but also of the specific official actions alleged to have violated the right.

In determining the applicability of qualified immunity to prisoner civil rights actions in the Third Circuit has held:

> 'When the defendant in a § 1983 action claims qualified immunity, a court must first determine if the plaintiff's allegations are sufficient to establish the violation of a federal constitutional or statutory right.' Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed. 818 (1999), *citing* Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). If the plaintiff's allegations meet this threshold, a court must next determine whether the right that the defendant's conduct allegedly violated was a clearly established one, about which a reasonable person would have known. Id. If the plaintiff's allegations fail to satisfy either inquiry, then a defendant is entitled to qualified immunity and dismissal of the case. Deciding 'this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.' Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

Doe v. Delie, 257 F.3d 309, 214-215 (3d Cir. 2001). See also Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir. 2000)(until the question of qualified immunity is addressed, a court cannot reach the underlying merits of the case).

In the instant case, Green has failed to establish that the Corrections Defendants' actions amounted to a violation of clearly established law, and has likewise failed to

address whether the Corrections Defendants could reasonably believe that their motivations where proper and lawful. See Carsen v. Senate of Commonwealth of Pennsylvania, 154 F.3d 82 (3d Cir. 1998). As discussed above, Green received an abundance of care for his injured hand from medical professionals both within and outside of SCI-Albion. See Overton Declaration. Green does not contend that he was summarily denied treatment, and has not established that these medical professionals mistreated him. See (Doc. # 75), generally. As such, the Corrections Defendants' actions were lawful, see Durmer, 991 F.2d at 68; Spruill, 372 F.3d at 236; King, 2005 U.S.Dist.LEXIS at 645, and at any rate, were not "plainly incompetent." See Gilles, 427 F.3d at 207.

Thus, in the alternative to the arguments for granting summary judgment set forth in previous sections of this brief, summary judgment should be granted in favor of the Corrections Defendants on the basis of qualified immunity.

## IV. CONCLUSION

WHEREFORE, it is respectfully requested that summary judgment be entered in favor of Corrections Defendants Brennan, Wolfe, Overton and Barr, and against the Plaintiff, Tyrone Green.

Respectfully submitted,

**Thomas W. Corbett, Jr.**
Attorney General

BY:   __/s/ Scott A. Bradley_____
SCOTT A. BRADLEY
Senior Deputy Attorney General
PA I.D. No. 44627

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief Litigation Section

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

(412) 565-7680

Date:  December 9, 2005