IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE GREEN | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 03-149 Erie |
| | ) | District Judge McLaughlin |
| MARTIN HORN, et al. | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment filed by Plaintiff against Defendants Baker and John Doe [Document # 77] be DENIED.

It is further recommended that the motion for summary judgment filed by Defendants Baker and Telega [Document # 83] be GRANTED.

It is further recommended that the motion to dismiss or for summary judgment filed by Defendants Barr, Brennan, Wolfe and Overton [Document # 86] be GRANTED.

This Court further recommends that Plaintiff's claim against Defendant John Doe be dismissed pursuant to 28 U.S.C. § § 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c).

The Clerk of Courts should be ordered to close this case.


**II.     REPORT**

 **A.     Introduction**

On May 2, 2003, Plaintiff Tyrone Green, acting *pro se*, filed the instant action. Plaintiff is an inmate currently housed at the State Correctional Institution at Huntingdon. The named Defendants remaining[1] in this case are: Edward Brennan, former Warden of SCI-Albion;

---

[1] Several other named Defendants have previously been dismissed from this case due to Plaintiff's failure to state a claim against them.

1

William Wolfe, Warden of SCI-Albion; William Barr, Superintendent's Assistant; and Maxine Overton, Health Care Administrator, all of the Pennsylvania Department of Corrections (and hereafter referred to as "the Corrections Defendants"); and Dr. Mark Baker and Physician's Assistant Daniel Telega, both independent contractors of the Department of Corrections (hereafter referred to as "the medical Defendants"). Plaintiff has also named a John Doe Security Guard. Plaintiff alleges that Defendants violated his constitutional rights by denying him access to follow-up medical care. As relief, Plaintiff seeks monetary damages, along with injunctive relief.

**B.     Standards of Review**

   **1.   *Pro Se* Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2.     Motion for summary judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.

3

Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3. Failure to state a claim under the PLRA

The Prison Litigation Reform Act provides that:

> (a) Screening - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;  or  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A.  Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and  42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or *sua sponte*, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory  provisions with respect to actions brought by

4

prisoners who are proceeding in forma pauperis. See 28 U.S.C. §1915(e)(2)². Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'".).

      A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d

---

   2 Title 28 U.S.C. §1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. See Swierkiewicz.

The court's obligation to dismiss a complaint under the PLRA is not excused even after the defendants have filed a motion to dismiss if it appears that the complaint fails to state a claim based upon grounds not raised by the defendants in their motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000); Palay v. United States, 125 F.Supp.2d 855, 860 (N.D. Ill. 2000).

### C.    Plaintiff's complaints

Plaintiff alleges that following a fall in a shower area he was denied prescribed followup medical treatment (in the form of a permanent cast) in violation of his Eighth Amendment rights. In his original complaint, Plaintiff explains:

> As a result of Plaintiff's slip and fall, he broke two (2) bones in his right hand.... On August 26, 2002, Plaintiff was transported to Millcreek Hospital wherein Plaintiff was issued a temporary cast which was placed upon Plaintiff's broken hand. Plaintiff was given said temporary cast due to the immense swelling in his right hand. Plaintiff was scheduled by attending physicians to have the temporary cast removed in two (2) days to have [been] replaced with full cast. Plaintiff was never rescheduled or transported back to Millcreek Hospital for his replaced cast by the institution.

Document # 1. In his amended complaint, Plaintiff further explains his allegations and attaches several exhibits in support of his claims. Document # 50. In another amended complaint, Plaintiff more specifically names Defendants Barr, Dr. Baker and "Security Captain John Doe" as the individuals responsible for denying him followup medical treatment. Document # 57. On Ocotber 11, 2005, Plaintiff filed another amended complaint naming for the first time Physician's Assistant Daniel Telega. Plaintiff alleges that Telega prematurely confiscated his splint and did so without the approval of Dr. Ferretti, his treating orthopedist.

### D.    *Respondeat Superior*

Despite numerous amendments to the complaint, Plaintiff has not specified the allegedly

6

unconstitutional conduct of Defendants William Wolfe and Edward Brennan.³ ⁴

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Because Plaintiff has not alleged any specific conduct by these Defendants, summary judgment should be granted in favor of Defendants Wolfe and Brennan.

---

³ This Court has previously noted that even after several amendments to the complaint, Plaintiff had not adequately alleged how each of the remaining Defendants were involved in the alleged denial of medical care. See Document # 66, Report and Recommendation, page 9 n.1. A civil rights complaint is only adequate if "it states the conduct, time, place, and persons responsible." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980).

⁴ This Court **liberally** construes Plaintiff's claims against Overton and Barr to include claims of personal involvement.

7

### E.     Plaintiff's Medical History

On August 25, 2001, Plaintiff reported to prison staff that he had fallen and injured his right hand.  Document # 86, Attachment A, Overton Declaration, ¶ 3.  Plaintiff was seen that same day by Nurse John Purvis who examined Plaintiff's hand, gave him a splint and an ace bandage, prescribed Motrin and the application of ice.  Id. at ¶ 6-7, 9.  Plaintiff was placed in the infirmary.  Document # 88, Exhibit A, Affidavit of Dr. Baker, ¶ 6.

The following day, August 26, 2001, Plaintiff was examined by Nurse James McDuff, who noted that the splint and ace bandage were intact and that Plaintiff refused additional medication and ice.  Document # 86, Overton Declaration, at ¶ 8.  The same day, Plaintiff was examined by Dr. David Bashline who directed the continued use of the splint, ace bandage and ice, and ordered an x-ray to be taken the following day.  Id.  Dr. Bashline ordered that Plaintiff be released from the infirmary.  Document # 88, Affidavit of Dr. Baker, ¶ 8.

Plaintiff's hand was x-rayed on August 27, 2001 at SCI-Albion and the x-ray was forwarded to Millcreek Community Hospital for evaluation.  Document # 86, Attachment A, at ¶ 10.  Plaintiff was diagnosed with a displaced right ring finger and an avulsion or bone splinter on his right pinky finger.  Id.  Plaintiff was transported from SCI-Albion to Millcreek Community Hospital for treatment.  Id. at ¶ 11.  While at Millcreek Community Hospital, Plaintiff was given a gutter splint and a sling for his right hand and advised to use ice.  Id. at ¶ 12.  A follow-up appointment was scheduled for September 5, 2001.  Id.; see also Document # 51, Attachment A, unnumbered page 9.  Plaintiff was transported back to SCI-Albion and was given ice, Tylenol and Ibuprofen.  Document # 86, Attachment A, ¶ 13.  The medical record reflects that Plaintiff was wearing the gutter splint and sling given to him at Millcreek Community Hospital upon arrival at SCI-Albion.  Document # 51, Attachment A, unnumbered page 9.

On September 4, 2001, Dr. Ferretti, an orthopedic specialist, was consulted regarding Plaintiff's previously scheduled follow-up appointment.  Document # 86, Attachment A, at ¶ 14.  It was determined that in light of unspecified "scheduling and security concerns," Plaintiff would be seen by Dr. Ferretti at SCI-Albion on September 14, 2001 rather than being

transported to the Millcreek Community Hospital. Id. at ¶ 15. The record reflects that Plaintiff did not show for this appointment. Undated Progress Notes from September, 2001, indicate that Plaintiff's chart was discussed with Dr. Ferretti after Plaintiff was a "no show" for his appointment. It was decided that x-rays would be taken at the prison and sent to Dr. Ferretti for his review "due to security issues of non-emergent outside trips." Id. at ¶ 15.

Prison staff contacted Dr. Ferretti who recommended that Plaintiff be scheduled for a follow-up appointment at the Millcreek Community Hospital in two weeks. Id. at ¶ 15. The follow-up appointment was scheduled for September 26, 2001. Id.

On September 21, 2001, Plaintiff was examined by Defendant Telega who noted that Plaintiff wanted a cast and admitted to removing the splint in order to wash his hands. Id. at ¶ 17. Plaintiff's hand was x-rayed with the results sent to Dr. Ferretti. Id. at ¶ 18. The x-ray showed that Plaintiff's hand was correctly aligned for healing. Id. After his review of the x-ray, Dr. Ferretti rescheduled Plaintiff's follow-up appointment from September 26 at Millcreek Community Hospital to October 12th at SCI-Albion, noting that Plaintiff's hand was healing well and there was "no medical necessity to send [Plaintiff] offsite." Id. at ¶ 19.

On October 12, 2001, Plaintiff was examined at SCI-Albion where his hand was again x-rayed. Id. at ¶ 20. The notations in the medical records indicate that Plaintiff's hand was healing (id. at ¶ 21), and further indicates that "there is progressive moderately advanced healed fractures of the base of the 4th and 5th metacarpals" with "moderately advanced healed fractures" (document # 56, Exhibit 12). There is a separate notation that indicates that "Patient voiced understanding." However, the record is not clear about what Plaintiff voiced his understanding.

On October 25, 2001, Plaintiff was examined by Defendant Telega. Document # 86, Attachment A, at ¶ 22. Plaintiff requested physical therapy for his hand. Id. Defendant Telega showed Plaintiff some exercises for his hand and prescribed Motrin. Id.

Thereafter, Plaintiff did not complain about his hand again until December 20, 2002 when he was prescribed Motrin. Id. at ¶¶ 24-25. Plaintiff's prescription was refilled on April 28, 2003. Id. at ¶ 26. Upon his transfer to a new correctional institution, Plaintiff complained of pain in his hand. X-rays were taken on March 19, 2004 and reviewed by a doctor who

indicated that the injury to Plaintiff's hand was healed and that there were "no new or acute fractures" or "significant arthritic changes." Id. at ¶ 28.

### F. Deliberate indifference under the Eighth Amendment

Both sets of Defendants have moved for summary judgment arguing that Plaintiff has failed to establish a claim under the Eighth Amendment.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his

10

behavior will not violate a prisoner's constitutional rights. <u>Youngberg v. Romeo</u>, 457 U.S. 307, 322-23 (1982). <u>See</u> also <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990).

In this Court's initial Report and Recommendation, the undersigned concluded that:

> "at this initial stage of the proceedings, it appears that Plaintiff has sufficiently alleged a serious medical need (in the broken bones of his right hand) and he has sufficiently alleged deliberate indifference (in the denial of prescribed medical treatment in the form of a permanent cast and follow-up treatment for the continuing problems with his hand). While pleading these allegations is far removed from proving them, Plaintiff should be given the opportunity to do so."

Document # 37, page 16. In this Court's later Report and Recommendation, the undersigned noted with some frustration that the medical records were difficult to decipher and that none of the Defendants had provided an affidavit from any medical personnel explaining the illegible records and concluded that

> "at this later stage of the proceedings in the face of two motions for summary judgment, Plaintiff has not proven his allegations of deliberate indifference. There is nothing in the record that shows that Plaintiff needed a permanent cast. Instead, the medical records only indicate that Plaintiff's hand was to be rechecked within a few days of his visit to the Emergency Room. It is Plaintiff's bald assertion, without any evidentiary support, that he was prescribed a permanent cast by Dr. Feretti at his initial appointment."

Document # 66, page 9. Thereafter, Plaintiff filed Objections to the Report and Recommendation and pointed out a previously illegible notation in the medical records which he believed stated "patient is to be sent to Millcreek Hospital via state corrections for cast" and signed by Physician's Assistant Daniel Telega. Document # 67, page 2. Plaintiff argued that "this information supports [the] claim that he was denied the treatment and care that was ordered and specified by his primary physician Dr. Ferretti." <u>Id.</u> at 3. Because of Plaintiff's suggested explanation of the medical notation in his Objections, Judge McLaughlin declined to adopt the Report and Recommendation.

Now, presently before this Court are summary judgment motions which are finally accompanied by extensive medical records, as well as declarations and affidavits explaining the sometimes illegible medical terms and notations. The medical records, along with the sworn explanations provided by Defendants, reflect that Plaintiff was medically examined shortly after

11

his fall and continuously thereafter. Besides receiving medical care within the institution, Plaintiff was transported to an outside hospital. Additionally, Plaintiff received several x-rays and received pain medications as well as splints and a sling. Plaintiff's main complaint is that he did not receive a permanent cast after it was allegedly prescribed and that Defendant Telega "confiscated" his splint too early without consulting with Dr. Ferretti.

In regards to Plaintiff's claim of entitlement to a permanent cast, as this Court has previously stated, "it is Plaintiff's bald assertion, without any evidentiary support, that he was prescribed a permanent cast by Dr. Ferretti at his initial appointment." See Document # 66, page 9. There is nothing in the medical records that reflects that Dr. Ferretti or any other medical professional prescribed a permanent cast for Plaintiff. The notation that patient is to be sent offsite "for casting", was made by Defendant Telega (at 10:00 am, before the actual transfer to the hospital and therefore before Dr. Ferretti had seen Plaintiff) and does not accurately reflect Dr. Baker's orders which only indicate that Plaintiff be sent offsite for an orthopedic consultation. See. Document # 88, Exhibit 2, page 22, Physician's Orders. Both Defendant Baker and Defendant Telega have provided sworn statements to the effect that Telega's notation "for casting" was an error as casting was not part of the treatment plan. Document # 88, Exhibit 1, Affidavit of Dr. Mark Baker, ¶¶ 12-14, 19-21; Document # 89, Exhibit 1, Affidavit of Daniel Telega, ¶¶ 8-11, 15. Summary judgment should be granted in favor of Defendants in this regard.

As to Plaintiff's claim that the premature "confiscation" of the splint by Defendant Telega constitutes deliberate indifference under the Eighth Amendment, this claim lacks merit. Defendant Telega has provided a sworn statement that neither he nor any other prison medical staff confiscated or discontinued Plaintiff's splint and sling. Document # 89, Exhibit 1, ¶ 12. Defendant Telega also swears that Dr. Ferretti ordered that the split and sling be removed because they were no longer medically necessary or appropriate to treat Plaintiff's injury. Id. at ¶ 13. Because Plaintiff has provided nothing more than bald assertions to the contrary, summary judgment should be granted.

12

### G. Plaintiff's motion for summary judgment

Plaintiff has moved for summary judgment against Defendants John Doe Security Guard and Dr. Baker.

Despite the advanced age of this case and the time period of discovery having passed, Plaintiff has never named John Doe or attempted to serve him. As such, in accordance with the Federal Rules of Civil Procedure and pursuant to this Court's authority under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c), Defendant John Doe should be dismissed from this action.

As to Dr. Baker, Plaintiff's motion for summary judgment should be denied for the same reasons that Dr. Baker's motion for summary judgment should be granted in that Plaintiff has failed to establish an Eighth Amendment claim against him.

### III. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the motion for summary judgment filed by Plaintiff against Defendants Baker and John Doe [Document # 77] be DENIED.

It is further recommended that the motion for summary judgment filed by Defendants Baker and Telega [Document # 83] be GRANTED.

It is further recommended that the motion to dismiss or for summary judgment filed by Defendants Barr, Brennan, Wolfe and Overton [Document # 86] be GRANTED.

This Court further recommends that Plaintiff's claim against Defendant John Doe be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c).

The Clerk of Courts should be ordered to close this case.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the

date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                      S/ Susan Paradise Baxter
                                      SUSAN PARADISE BAXTER
                                      Chief United States Magistrate Judge

Dated: May 9, 2006