IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TYRONE GREEN                          :    C.A. NO. 03-149 ERIE
          Plaintiff,                  :
                                      :
vs.                                   :    Dist. Judge - McMLAUGHLIN
                                      :    Magistrate Judge - BAXTER
MARTIN HORN, ET AL.,                  :
          Defendants.                 :

OBJECTION TO REPORT & RECOMMENDATION
AND MOTION FOR SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

AND NOW, Comes the Plaintiff, TYRONE GREEN, pro se, and files the instant objection to the Report and Recommendation of the Magistrate Judge in the above-captioned case, and in support thereof respectfully represents the following:

SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as any material fact and that the moving party is entitled to judgment as a matter of law. Further, Rule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact to demand at least one sworn averment of that before the lengthy process of litigation continues. School v. First Fidelity, 912 F.2d 654, 657 (3d Cir.1990)(quoting Lujan v. Nat'l Wildlife, 497 U.S. 871 (1990).

REASON FOR SUMMARY JUDGMENT

SCI-Albion security captain, Defendant JOHN DOE, was deliberately indifferent to plaintiff's serious medical needs by intentionally denying authorization to transport plaintiff to scheduled medical/treatment appointment as prescribed by Millcreek Hospital and SCI-Albion's medical staff on two (2)

1

separate occasions. See, Hurst v. Phelps, 579 F.2d 940 (1978). The Hurst case is very similar to plaintiff's case. In Hurst, prison guards were deliberately indifferent what they refused to take plaintiff to the medical appointment based upon the grounds that he was by them deemed a security risk.

In Smallwood v. Renfro, 708 F.Supp. 182-86, the plaintiff was likewise wrongfully denied transport to the hospital with a bloody lip. Moreover, the United States Supreme Court, in Estelle v. Gamble, 429 U.S. 97, 104-05, stated: "We therefore conclude that deliberate indifference to a serious medical need of a prisoner constitutes an unnecessary and wanton infliction of pain," prohibited by the Eight Amendment. This is true whether the indifference in manifested by the prison doctor in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care, or intentionally interfering with the treatment once prescribed. Id. See also, Delker v. Maas, 843 F.Supp. 1390, 1398 (D.Or.1994)(prison officials disregarding a surgeon's recommendation on non-medical grounds could constitute deliberate indifference); H.B. Lewis, 803 F.Supp. 246, 247 (D.Ariz.1992)(overiding of medical decision by security staff can constitute deliberate indifference).

If prison officials send a prison with special needs to outside specialist, they are then obliged to carry out the specialist's orders. Ellis v. Butler, 890 F.2d 1000, 1004 (cancellation of appointment with knee specialist); Johnson El v. Dist. of Columbia, 579 A.2d 163, 169 (D.C. 1990)(allegation that dermatological treatment was delayed or denied for lack of transportation stated a deliberate indifference claim).

2

Plaintiff herein has provided overwhelming case law supportive of his claim that once a doctor or specialist makes a recommendation as to the care of a prisoner brought to him/her by prison officials, prison officials are then obliged to carry out that specialist's order of care or treatment.

Facts supporting plaintiff's claims are undisputed. Accompanying this motion for summary judgment is a copy of Defendant BAKER'S answer to Plaintiff's Interrogatories. On Page #4, Question #4, Defendant BAKER states: "According to plaintiff's medical records from the Pennsylvania Department of Corrections, plaintiff was scheduled for an on-site visit with DR. FERRETTI on Friday, September 14, 2001 because medical staff was unable to schedule plaintiff off-site due to 'scheduling and security concerns.'"

On Page #5, Question #5, Defendant BAKER states: "After discussing the security and scheduling concerns with DR. FERRETTI, the medical staff was able to schedule on-site visit with orthopedic specialist DR. FERRETTI to evaluate and treat plaintiff's condition."

On Page #6, Question #9, Defendant BAKER states that he: "ordered plaintiff to be sent to Millcreek Hospital on August 27, 2001 and on September 5, 2001." [On September 5, 2001, plaintiff was denied transportation to said hospital for the first two evaluations with the orthopedic physician following plaintiff's injury on August 25, 2001.]

On Page #7, Question #10, Defendant BAKER states: "It was not my decision not to send plaintiff to Millcreek Hospital." To the contrary, defendant BAKER ordered that plaintiff be sent to Millcreek Hospital.

3

On Page #8, Question #15, when Defendant BAKER was asked if he was responsible for NOT sending plaintiff to his first two hospital appointment, Defendant BAKER states: "No!"

Plaintiff's uncontradicted, undisputed evidence of no genuine dispute, which is supported by Defendant BAKER'S answers to interrogatories, entitles plaintiff to a grant of Summary judgment in his favor, because there is no genuine dispute as to the issue that Defendant Security Captain "JOHN DOE" at SCI-Albion denied plaintiff the prescribed medical follow-up-care by refusing to allow transportation of plaintiff to Millcreek Hospital on the occasions stated. See, Estelle v. Gamble, 429 U.S. at 104. See also, FRCP 56(c). Such indifference manifests an intentional refusal to provide medical care and constitutes delayed medical treatment for non-medical reasons and indifference to a reasonable request for treatment that resulted in plaintiff's suffering and risk of further injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir.1993).

On many occasions Millcreek Hospital and SCI-Albion medical staff scheduled plaintiff for follow-up treatment. However, the type of treatment plaintiff would have received is not the focus of the complaint. Furthermore, the follow-up treatment that plaintiff would have received was of importance because he was re-scheduled on three (3) different occasions to received same.

Plaintiff was told by the attending physician at Millcreek Hospital that plaintiff would be returned there for casting. The only person that can dispute this particular averment is the attending physician. It is clear that the Defendants do not know what type of treatment the plaintiff would have received, because

4

of the inadequate record-keeping practice at SCI-Albion. Thus, this Court should find it suspect and nor credit Defendant BAKER'S allegation that SCI-Albion officials had a conversation with DR. FERRETTI on several occasions without being briefed on the type of treatment plaintiff was to have received. And, if plaintiff was not to receive casting, then one cannot help but wonder "what type of treatment" plaintiff was to receive which was of such importance that SCI-Albion medical staff and Millcreek Hospital personnel tried three on (3) occasions to have plaintiff sent for treatment "off-site" (i.e. at Millcreek Hospital). Plaintiff submits that:

>  1. Scheduling and security concerns are non-medical reasons;
>  2. Defendant(s) claim that plaintiff was being treated at SCI-Albion and that the medical staff there determined on October 1, 2001 that plaintiff needed no "off-site" treatment because his hand was healing well, should not be credited because this was six (6) weeks <u>after</u> plaintiff's injury and <u>after</u> three previously denied transportations to medical appointments.
>  3. It is obvious that SCI-Albion's medical staff determined not to themselves attend to plaintiff's medical needs, because over the course of six weeks they kept scheduling and re-scheduling plaintiff for "off-site" Millcreek Hospital follow-up treatment/care which Defendant JOHN DOE (security Captain) would not allow transport for. It was determined not to send plaintiff "off-site" (i.e. to Millcreek Hospital) because, allegedly, his hand was in an advanced stage of healing although several medical appointments over the course of six (6) weeks for follow-up care/treatments had been denied him.

It is submitted that prison officials may not shop around until they get a medical opinion that suits their non-medical concerns and may not intentionally rely on a medical opinion (or no medical opinion) that is without adequate basis. <u>Hamilton v. Endell</u>, 981 F.2d 1063, 1066-67 (9th Cir.1992).

Moreover, prison security staff (e.g. Defendant Captain JOHN DOE) overruling of medical orders, constitutes deliberate indifference. See, Casey v. Lewis, 834 F.Supp. at 1545). Factors that interfere with medical care include those rules and procedures that restrict medical care on non-medical grounds, such as "security and transportation." See, United States v. Michigan, 680 F.Supp. 928, 1002, 1043-45 (W.D. Mich. 1987)(security or transportation constraints).

Thus, summary judgment should be granted against Defendant JOHN DOE (Security Captain) at SCI-Albion, because said defendant fails to dispute plaintiff's claims and fails to respond to plaintiff's complaint; and, fails to turn over discovery, and has been deliberately indifferent to plaintiff's medical needs throughout. Id.

Furthermore, plaintiff moves for Summary Judgment against Defendant BAKER, which should be granted as a matter of law.

The keeping of medical records is a necessity. Johnson El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir.1989). Adequate and accurate records are of critical importance....in any attempt to provide a continuity of medical care, and absence or deficient records create the possibility for disaster. Burk v. Teasdale, 492 F.Supp. 650, 676 (W.D. Mo.1980).

Numerous courts have condemned the failure to maintain a reasonably complete and organized system of medical records. See, Fambro v. Fulton County Georgia, 713 F.Supp. 1426, 1429 (1989); Cody v. Hillard, 599 F.Supp. 1025, 1040 (8th Cir.1987).

In the case at bar, the magistrate judge has condemned the manner in which ACI-Albion medical staff received plaintiff's

6

medical records, and was unable to read crucial portions thereof and missed key points of plaintiff's claims.

Defendant BAKER has claimed that plaintiff was not ordered to return to Millcreek Hospital for casting. See (Defendant BAKER'S Answer to Plaintiff's Amended Complaint, dated 10-1-05, Page 2). Said defendant state that no permanent case was ordered for plaintiff's hand. However, plaintiff's medical record gives no such indication as to "type of treatment" plaintiff was to receive, because SCI-Albion medical staff failed to record it. Any reasonable person would think that the medical staff, which purports to have been in discussion with the "off-site" attending physician at Millcreek Hospital would have inquired into the type of treatment plaintiff was ordered to be returned to the hospital for. Plaintiff was informed by the attending physician that he was to receive casting, and plaintiff strongly believes that the same physician at Millcreek Hospital informed the SCI-Albion medical staff of that fact, but SCI-Albion staffers either failed to make record of it or removed recording of same following the multiple failure to transport plaintiff to Millcreek Hospital for said treatment. Defendant BAKER has made bald assertions without any medical records to support his claim that "no permanent cast was ordered for plaintiff's hand."

Defendant BAKER cannot dispute through medical records plaintiff's allegation that he was to be returned to Millcreek Hospital for casting because no record was kept as to the type of treatment plaintiff was to receive, although plaintiff was told, by the attending physician, the type of treatment he would received upon his return to the hospital. Thus, if plaintiff's allegations is undisputed by factual record, then as a matter of

law the court is suppose to take plaintiff's allegations as being true.

On Page #6 of Defendant BAKER'S answer to interrogatories the question was asked him - QUESTION: "What security officer had the scheduling and security concern with transporting plaintiff to Millcreek?" BAKER'S RESPONSE: "This information is unknown to the defendant."

Again, it is shocking! Here you have an "unknown" security officer denying plaintiff follow-up medical care via the denial of transportation thereto on three (3) occasions and Defendant BAKER "failing to keep a record of the security officer's name.

On Page #3 of Defendant BAKER'S answer and affirmative defense to plaintiff's complaint, at line 16 Defendant BAKER states: **"Plaintiff's claimed injuries and or damages, if any, were the result of conduct of individuals and or entities not within Dr. Baker's control."**

Plaintiff submits that it is well-settled that "medical concerns" can override security on medical issues. Defendant BAKER'S decision could have overridden the "unknown security officer's" had Defendant BAKER taken the proper administrative steps (chain of command). However, Defendant BAKER did nothing. And the treatment that plaintiff did receive at SCI-Albion was ordered by DR. FERRETTI at Millcreek Hospital. Further, once the "unknown security officer" refused to authorize the transport of plaintiff per doctor's order for treatment, Defendant BAKER was obliged to at least contact his supervisor, if not the facility manager of SCI-Albion. Defendant BAKER compounded the denial or neglect of medical care to plaintiff by standing by and doing

8

nothing. Such inaction makes him just as liable as "unknown security officer" JOHN DOE.

Finally, Defendant BAKER states that the plaintiff did not show up for an on-site medical appointment on September 14, 2001. Plaintiff had no knowledge of this scheduled medical appointment. Furthermore, if plaintiff was scheduled for care and/or treatment on 9/14/2001, plaintiff's housing unit was less than a three (3) minute walk from SCI-Albion's inmate infirmary. A simple 3-digit phone call to plaintiff's housing unit apprising the housing officer (and thereby plaintiff of the scheduled 9/14/2001 appointment would have certainly result in plaintiff having arrived for same. However, plaintiff was never apprised of any such medical appointment, and there is no record of a "call-out" (daily roster of individual inmate assignments and directives to appear at some place at a particular time) designating a medical appointment for plaintiff on 9/14/01.

The facts set forth in this objection and request for Summary Judgment in favor of plaintiff, shows reiterates the complaint that Defendants BAKER and JOHN DOE (unknown Security Captain) were deliberately indifferent to plaintiff's medical needs.

On September 7, 2005, the district court declined to adopt the magistrate judge's report and recommendation for the following reasons: (1) plaintiff had argued that there was a notation in the medical records which read: "Patient is to be sent to Millcreek Hospital via State Corrections for casting." (Page 2 of Order).

However, both Defendants BAKER and TELEGA's notations "for casting" was an error, as casting was not part of the treatment

9

plan. **See,** (R&R, p.12, 5/9/06).

It is important to note that from the very beginning of plaintiff's 1983 Petition he set forth the claim that he had been denied follow-up treatment in the form of "casting." The defendants then denied any mention of "casting" being connected with plaintiff's care/treatment in the early stages of this law suit -- before the medical records were provided in discovery. Once the medical record was turned over, it reflected plaintiff's claim that he was in fact sent to Millcreek Hospital "for casting of his hand," and that he had in fact reminded Defendant TELEGA of this on September 21, 2001.

Now, the only defense offered by the Defendants, since their earlier assertions are disporven by the medical records, is that "the notation by physician assistant, Defendant TELEGA, was an error on his part." If not ripe for Summary Judgment, this is certainly a matter for a jury to decide.

Plaintiff's claim is that he was sent to Millcreek Hospital for casting and while at said hospital DR. FERRETTI (who is also an employee of SCI-Albion) determined that plaintiff's hand then too swollen for casting and that the plaintiff would have to be returned (at some later date presumdely after the swelling had subsided to the extent) casting could be adequately applied.

The record proves that. Only now do the defendants assert that the "casting" notation placed in the record by Defendant TELEGA was an "error," and that although plaintiff was scheduled to return to Millcreek Hospital after the swelling subsided, it was not for "casting." Yet, unexplained, no records allegedly exist indicating exactly what type of medical treatment was to be

10

provided to plaintiff upon his return to Millcreek Hospital.

Plaintiff has formed his factual averments in the complaint, etc., based on his personal and face-to-face conversation with DR. FERRETTI and Defendant TELEGA -- prior to reception of the medical records. However, it was not until <u>after</u> reviewing the medical record that plaintiff learned those record in fact verify and support his claims, and refuting the earlier averments of the defendants that no permanent casting was ordered or scheduled for plaintiff at Millcreek Hospital and that the notation in the medical record "for casting" was an error. Poppycock!

DR. FERRETTI, being an employee of SCI-Albion, is/was aware of the cost effect of transporting inmates from SCI-Albion to Millcreek Hospital, and common knowledge would lead a reasonable person to believe that by scheduling plaintiff for a return trip to Millcreek Hospital clearly suggests that DR. FERRETTI believed that the prison was not equipped and/or capable of providing the treatment/care that the plaintiff needed; if so, then certainly a return trip to Millcreek Hospital would not have been medically prescribed.

SCI-Albion is well equipped with all sorts of rehabilitation materials, machines and and treatments from spas to physical therapy equipment. **The only treatment that SCI-Albion is unable to provide, and which in fact it could not provide to plaintiff was "<u>casting</u>."** And whether or not the facts in this matter find for the plaintiff or the defendant is, again, a matter for a jury to decide should summary judgment not be granted as the magistrate judge would have it.

Defendants BAKER, OVERTON, TELEGA and the "unknown security Captain (JOHN DOE), are trying to overshadow plaintiff's claims

11

with medical records that reflect the minimal amount of treatment provided by SCI-Albion's medical staff by means of X-rays and Motrin -- <u>after</u> plaintiff was denied transportation and the ability to make doctor-scheduled appointments, based upon "unspecified non-medical scheduling" and "non-medical security concerns." (R&R, Page 8).

Plaintiff, by way of discovery, requested that the defendants turn over all X-rays taken (so as to showing the condition of the splint and the two broken bones of plaintiff's hand and the unstable posture the two broken fingers were in. The defendants have failed to comply or otherwise provide plaintiff with the requested X-rays photographs. These X-rays would show that no competent doctor acting in his professional capacity would have left plaintiff's hand in the condition it was in, nor allowed it to heal without placement thereon of a "cast" to facilitate the corrective healing process.

The two main questions to be determined by this Court is: **Have the defendants given a proper medical reason for failing to return plaintiff to his scheduled appointments at Millcreek Hospital? And, did their failure to do so on various occasions, based upon the facts and the official record, reflect a deliberate indifference to plaintiff's medical care/treatment as prescribed by a qualified doctor? Suggested answer: No.**

By leaving plaintiff's hand in a "uncasted posture following subsiding of the swelling," it prolonged the healing process, caused unwanton pain and suffereing, and prevented the uncast, broken bones from healing properly to the extent plaintiff's range of hand-movement feels unnatural and is impeded to some

12

extent.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issue of material fact. See, FRCP 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir.1997). Pro se pleadings can only be dismissed for failure to state a claim if it appears "beyond any doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." Haines v. Kerner, 404 U.S. 519, 520-521 (1972), quoting Conley v. Gibson, 355 U.S. 41-45-46 (1975).

In the instant case, the records shows clearly that plaintiff's claims are supported by the record, and with the facts and evidence presented by plaintiff a reasonable could rule in his favor. Anderson, 477 U.S. at 247-249.

The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e. depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; County Floors, 930 F.2d at 1061.

In the case at bar, the plaintiff has shown facts to support his claims by answers, by interrogatories and admissions. Thus, plaintiff avers that if granted the right to proceed, he can prove every element to the extent that he would be granted relief under the civil law.

On Page 13 of the R&R, the magistrate judge states: "Despite the advance age of this case and the time period of discovery having passed, plaintiff has never named JOHN DOE or attempted to serve and Defendant JOHN DOE should be dismissed from this

13

action."

With all due respect, the magistrate judge's information is not accurate. Defendant JOHN DOE was served. In fact, the attorney for JOHN DOE acknowledged receipt of plaintiff's amended complaint served on him. See, (Document #92, filed December 20, 2005). The complaint was served via institutional mail. SEE. Document #75 10-11-05

The magistrate judge also recommends that Defendant JOHN DOE be dismissed because plaintiff fails to identify him by his/her proper name. However, on numerous occasions plaintiff has attempted to acquire the true and correct name of Defendant JOHN DOE, and has asked this information from Defendants BAKER and TELEGA to reveal the name-identity of the security officer that had the alleged "scheduling and security concerns," and both have responded, to-wit: "This information is unknown to the defendant." See, (Defendant BAKER'S Answers to Interrogatories, Page 6).

## CONCLUSION

Plaintiff has no objection to Defendants WOLF and BRENNEN being dismissed from this civil action. However, Defendants OVERTON, BAKER, TELEGA and "unknown Security Captain (JOHN DOE) are collectively responsible for the denied care and treatment of plaintiff and all other inmates in their custody. Defendant OVERTON is head of SCI-Albion medical staff. It is his and BAKER'S responsibility that all scheduled medical appointments for "out-side care/treatment" are met. Defendant "unknown" Security Captain (JOHN DOE) is responsible for arranging and/or authorizing the transportation of inmates to all prescribed "out-side medical appointments" as recommended by out-side

physicians, in this case DR. FERRETTI.

All of the Defendants neglected their responsibilities in failing to adhere to the recommendation of the outside physician and by denying plaintiff follow-up treatment with the out-side physician (regardless of what that treatment may have entailed). Surely the out-side physician, DR. FERRETTI, who is also employed by SCI-Albion felt that the medical care plaintiff required could not be provided by SCI-Albion medical staff, in-house. The record is clear that plaintiff was denied follow-up care/treatment at Millcreek Hospital for a serious injury, based on 'unspecified scheduling and security concerns' of a non-medical nature.

**WHEREFORE**, the Plaintiff respectfully requests this Court not adopt the magistrate's report and recommendation,, and demands that either summary judgment be rendered in plaintiff's favor and/or that a trial be held so a jury can decide any existing dispute between plaintiff and defendants.

DATED: May 15, 2006

TYRONE GREEN, EP-4593
1100 Pike Street
Huntingdon, PA 16654-1112